Timothy W. Snider, OSB No. 034577
timothy.snider@stoel.com
Stephen H. Galloway, OSB No. 093602
stephen.galloway@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone: 503.224.3380
Facsimile: 503.220.2480

      Attorneys for Defendant


# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION


| | |
|---|---|
| HEATHER GILBERTO, individually and on behalf of other customers, | Case No.: 3:18-cv-01003-AC |
| | **DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT** |
| Plaintiff, | |
| v. | **Request For Oral Argument** |
| WALGREEN CO., | |
| Defendant. | |


DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... iii

RULE 7-1(A) CERTIFICATION .............................................................................. 1

MOTION ...................................................................................................................... 1

MEMORANDUM ........................................................................................................ 1

I.      INTRODUCTION ............................................................................................ 1

II.     BACKGROUND .............................................................................................. 4

        A.      The Bottle Bill .................................................................................... 4

        B.      The UTPA ........................................................................................... 6

        C.      The Amended Complaint ................................................................... 7

III.    ARGUMENT ................................................................................................... 8

        A.      Motion to Dismiss Standard .............................................................. 8

        B.      The Complaint Does Not Allege That Walgreens Engaged in an Unlawful
                Trade Practice ..................................................................................... 9

                1.      Plaintiff Does Not Allege a Misrepresentation as to "Real Estate,
                        Goods or Services" Required to State a Claim for Violation of
                        ORS 646.608(1)(b), (e), (i), (s) or (t) ...................................... 9

                2.      Plaintiff Does Not Allege a False or Misleading "Price Reduction"
                        Necessary to State a Claim for Violation of ORS 646.608(1)(j) ............ 12

        C.      Plaintiff Fails to Plead Facts Demonstrating an "Ascertainable Loss" to
                Her Individually or to the Putative Class ........................................ 13

                1.      A Private Plaintiff Must Allege an Ascertainable Loss Caused by a
                        Violation of the UTPA .............................................................. 14

                2.      The Amended Complaint Fails to Plead an Ascertainable Loss
                        Caused by the Alleged UTPA Violations ................................. 16

# TABLE OF CONTENTS

**Page**

D.      Plaintiff Fails to Plead Facts Demonstrating That Walgreens Acted
Recklessly or Knowingly in Charging Bottle Deposits for Two Exempt
Beverages ........................................................................................................ 17

IV.     CONCLUSION ............................................................................................................. 22

# TABLE OF AUTHORITIES

**Page**

## Cases

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................................................8, 19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................................................8, 19

*Branch v. Tunnell*,
14 F.3d 449 (9th Cir. 1994) .......................................................................................21

*City of Sausalito v. O'Neill*,
386 F.3d 1186 (9th Cir. 2004) .....................................................................................4

*Comcast Corp. v. Dep't of Revenue*,
356 Or. 282, 337 P.3d 768 (2014) .............................................................................10

*In re Comp. of Muliro*,
359 Or. 736, 380 P.3d 270 (2016) .............................................................................10

*Cullen v. Inv. Strategies, Inc.*,
139 Or. App. 119, 911 P.2d 936 (1996).....................................................................10

*Denson v. Ron Tonkin Gran Turismo, Inc.*,
279 Or. 85, 566 P.2d 1177 (1977) (en banc) ............................................................13

*Forth v. Walgreen Co.*,
No. 1:17-cv-02246, 2018 WL 1235015 (N.D. Ill. Mar. 9, 2018) .............................21

*Galbraith v. County of Santa Clara*,
307 F.3d 1119 (9th Cir. 2002) ...................................................................................22

*Hamilton v. Gen. Mills, Inc.*,
No. 6:16-CV-382-MC, 2016 WL 6542840 (D. Or. Nov. 2, 2016)...........................18

*Hamilton v. General Mills, Inc.*,
No. 6:16-CV-382-MC, 2016 WL 4060310 (D. Or. July 27, 2016) ....................18, 19

*Hickey v. Settlemier*,
141 Or. App. 103, 917 P.2d 44, *review denied*, 323 Or. 690, 920 P.2d 549 (1996)...............18

# TABLE OF AUTHORITIES

**Page**

*Mack v. S. Bay Beer Distribs., Inc.*,
  798 F.2d 1279 (9th Cir. 1986) ...................................................................................4

*Mendoza v. Lithia Motors, Inc.*,
  No. 6:16-CV-01264-AA, 2018 WL 1513650 (D. Or. Mar. 27, 2018)....................................13

*Pearson v. Philip Morris, Inc.*,
  358 Or. 88, 361 P.3d 3 (2015) ...................................................................................14, 15, 16

*Sanders v. Francis*,
  277 Or. 593, 561 P.2d 1003 (1977) ...........................................................................12

*Scharfstein v. BP W. Coast Prods., LLC*,
  292 Or. App. 69, __ P.3d __ (2018)...........................................................................14, 15, 16, 17

*Scott v. W. Int'l Surplus Sales, Inc.*,
  267 Or. 512, 517 P.2d 661 (1973) ..............................................................................14

*Silva v. Unique Beverage Co.*,
  No. 3:17-cv-00391-HZ, 2017 WL 4896097 (D. Or. Oct. 30, 2017)............................5, 14, 15

*State ex rel. State Game Comm'n v. Gold Hill Irr. Dist.*,
  18 Or. App. 99, 523 P.2d 1287 (1974)........................................................................18

*Stevens v. Czerniak*,
  336 Or. 392, 84 P.3d 140 (2004) ...............................................................................10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)....................................................................................................21

*Weigel v. Ron Tonkin Chevrolet Co.*,
  298 Or. 127, 690 P.2d 488 (1984) ..............................................................................18

*Youell v. Exxon Corp.*,
  48 F.3d 105 (2d Cir. 1995)..........................................................................................18

*ZRZ Realty Co. v. Beneficial Fire & Cas. Ins. Co.*,
  222 Or. App. 453, 194 P.3d 167 (2008).......................................................................18

# TABLE OF AUTHORITIES

**Page**

**Statutes**

Bottle Bill ................................................................................................................ passim

Oregon's Beverage Container Act ...................................................................................1

Oregon's Unlawful Trade Practices Act ................................................................. passim

ORS 72.1050(1) .............................................................................................................10

ORS 459A.700, *et seq.* ....................................................................................................4

ORS 459A.702(1) .............................................................................................................5

ORS 459A.702(2) .............................................................................................................5

ORS 459A.702(2)(b) .........................................................................................................5

ORS 459A.717 ...........................................................................................................5, 9

ORS 646.605(6)(a) ............................................................................................................9

ORS 646.605(10) .............................................................................................................17

ORS 646.607(1)-(12) .........................................................................................................6

ORS 646.608(1)(a)-(aaaa) ............................................................................................6, 17

ORS 646.608(1)(b) ..................................................................................................... passim

ORS 646.608(1)(e) ...........................................................................................6, 9, 11, 12

ORS 646.608(1)(g) ............................................................................................................9

ORS 646.608(1)(i) ...........................................................................................6, 9, 11, 12

ORS 646.608(1)(j) ......................................................................................................12, 13

ORS 646.608(1)(kkk) ........................................................................................................6

ORS 646.608(1)(nn) ..........................................................................................................6

ORS 646.608(1)(rr) ............................................................................................................6

## TABLE OF AUTHORITIES

**Page**

ORS 646.608(1)(s) ..................................................................6, 9, 11, 12

ORS 646.608(1)(t) ......................................................................6, 9, 11

ORS 646.608(1)(u) ...................................................................6, 15, 17

ORS 646.608 (2) ...................................................................................8

ORS 646.608(4) ...................................................................................6

ORS 646.638(1) .................................................................................17

ORS 646.638(8)(a) ...................................................................8, 14, 17

Uniform Commercial Code, Article 2 ................................................10

Wash. Rev. Code § 19.86.020 .............................................................6

Washington Consumer Protection Act................................................6

**Rules**

Fed. R. Civ. P. 12(b)(6)....................................................................1, 8

Fed. R. Evid. 201(b)(2) ......................................................................4

Local Rule 7-1(a) ...............................................................................1

ORCP 32 I.........................................................................................20

ORCP 32 H .......................................................................................20

**Regulations**

OAR 137-020-0150 ...........................................................................17

**Other Authorities**

*Black's Law Dictionary* (10th ed. 2014).........................................10

*Webster's Third New Int'l Dictionary* (2002)................................10

98023060.5 0009869- 00008

## RULE 7-1(a) CERTIFICATION

Undersigned counsel certifies that he has conferred with Plaintiff's counsel by telephone regarding the issues raised in this motion, but the parties were unable to resolve them.

## MOTION

Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendant Walgreen Co. ("Walgreens") moves to dismiss Plaintiff's claims for violations of Oregon's Unlawful Trade Practices Act (the "UTPA") because Plaintiff fails to state a claim upon which relief may be granted. This motion is supported by the records on file and the following Memorandum.[1]

## MEMORANDUM

## I. INTRODUCTION

On January 1, 2018, amendments to Oregon's Beverage Container Act (the "Bottle Bill") went into effect that expanded the universe of beverage containers eligible for refunds and increased the refund amount from five cents to 10 cents. Among other things, after the amendments, juice and many other beverages were eligible for refunds under the Bottle Bill for the first time.

After the Bottle Bill amendments, Plaintiff alleges she purchased Hawaiian Punch and Yoohoo chocolate drink at a Walgreens store in Salem, Oregon on May 31, 2018, and Walgreens collected 10-cent deposits for the beverage containers. Plaintiff later learned that those beverage containers were not, in fact, eligible for a refund under the Bottle Bill. Plaintiff "was not going to let Walgreens get away with what she perceived was an unfair and unjust practice." (Am. Compl. ¶ 11.) She moved fast. Plaintiff complained to "Walgreens management and to

---

[1] Walgreens does not move against Plaintiff's second claim for unjust enrichment at this time, and reserves its right to move against that claim, and to raise additional defenses to the UTPA claims.

Page 1    -    DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

corporate," engaged a consumer protection attorney, conducted a private investigation, and barely a week after the May 31 purchases, filed a federal class action lawsuit seeking more than $5 million.  (*Id.* ¶ 10.)  She claims that Walgreens' conduct "was reckless, in pursuit of profit, and constituted a wanton, outrageous and oppressive violation" of her and putative class members' rights.  (*Id.* ¶ 32.)  According to Plaintiff, Walgreens sought to increase corporate profits one 10-cent juice box deposit at a time.  (*Id.* ¶ 2.)

Walgreens moved to dismiss Plaintiff's Complaint (the "Motion," Dkt. No. 8) on the grounds that it failed to state a claim under the UTPA.  Plaintiff did not respond to the Motion but instead filed an Amended Complaint (Dkt. No. 11).  The Amended Complaint, however, suffers from the same pleading deficiencies as Plaintiff's original pleading, and the UTPA claims should be dismissed.

*First*, the Amended Complaint fails to plead facts supporting any of the claimed UTPA violations.  Plaintiff asserts that Walgreens violated UTPA provisions that prohibit misrepresentations concerning "real estate, goods or services," but Plaintiff alleges no misrepresentations concerning the goods Plaintiff purchased—Yoohoo chocolate drink and Hawaiian Punch.  (Am. Compl. ¶ 9.)  Instead, Plaintiff claims that Walgreens made implied misrepresentations concerning the separate 10-cent "Bottle Deposit" charged to Plaintiff when she purchased those drinks, *e.g.*, that Plaintiff could obtain a refund when the containers were returned under the Bottle Bill.  (*Id.*)  That implied representation, however, was not a representation as to *goods* and does not constitute a violation of any of the UTPA provisions relied upon by Plaintiff.  At best, Plaintiff has alleged that Walgreens violated the Bottle Bill.  But the Oregon Liquor Control Commission ("OLCC") has exclusive authority to enforce the

Bottle Bill, and the Legislature has not incorporated the Bottle Bill (or violations of the Bottle Bill) into the UTPA, as it has with numerous other types of charges and statutory violations.

*Second*, Plaintiff fails to allege facts supporting her claim that she and other class members suffered an ascertainable loss as a result of any alleged UTPA violation.  In the original Complaint, Plaintiff alleged that she suffered ascertainable loss because she paid more for beverages at Walgreens due to the 10-cent deposit than if she had bought the juice and chocolate drink at another store.  (Compl. ¶ 20.)  When the plausibility of this allegation was challenged in the Motion, Plaintiff abandoned that theory and now claims her ascertainable loss was the 10-cent bottle deposit itself.  (Am. Compl. ¶ 23.)  That ascertainable loss (the 10-cent deposit), however, has no connection to the alleged UTPA violations (prohibiting misrepresentations as to goods).  To allege ascertainable loss for a UTPA violation predicated on misrepresentation of goods, Plaintiff must allege either that she suffered ascertainable loss because the goods received were not as valuable as represented (diminished value theory), or that she would not have made the purchase at all if she knew the truth (purchase price refund theory).  Plaintiff alleges neither. Because Plaintiff has not alleged ascertainable loss tied to any alleged UTPA violation, her UTPA claims fail.

*Third*, even if the Amended Complaint stated a violation of the UTPA and ascertainable loss (it does not), it still fails to allege any facts establishing that Walgreens acted recklessly or knowingly in charging the 10-cent deposit on Yoohoo chocolate drink and Hawaiian Punch. After this was pointed out in the Motion, Plaintiff attempted to "beef up" these allegations by referencing Walgreens' involvement in a lawsuit relating to generic drugs, a *New York Times* article from 2015 concerning compliance with New York's bottle bill, and a fine paid by Walgreens to the OLCC last year.  Plaintiff's new allegations do not satisfy her burden of

Page 3    -    DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

alleging a reckless or knowing violation of law because they bear no relationship to any of the conduct alleged in this lawsuit.

Plaintiff may have alleged facts sufficient to state a claim of unjust enrichment, but she has not pled and cannot plead that erroneous bottle deposit charges somehow violate the UTPA. Walgreens respectfully requests that the Court dismiss Plaintiff's UTPA claims.

## II.  BACKGROUND

### A.    The Bottle Bill.

In 1971, Oregon passed the Bottle Bill.  It was the first such legislation of its kind with the goal of reducing litter and increasing consumer recycling by requiring beverage container distributors to pay refunds to consumers returning qualifying beverage containers.  *See generally* ORS 459A.700, *et seq.*

For retailers like Walgreens, the Bottle Bill is a zero-sum transaction.  In general, beverage distributors charge a deposit to retailers when they deliver beverages for resale.  The retailer then passes through the deposit charge to the purchaser buying the beverage.  When a person returns the container (usually *not* the purchaser), the retailer pays the refund.  When the retailer returns the container to the distributor, the distributor reimburses the retailer for refunds paid.  *See* Oregon's Bottle Bill, Frequently Asked Questions (the "OLCC Guidance"), Ex. 1 to Snider Decl.[2]  Both on the sale of beverages and the return of beverage containers, retailers like Walgreens do not earn a 10-cent profit on the Bottle Bill.  It is only distributors—not retailers— that keep any unredeemed deposits on beverage containers that are not returned for a deposit.

---

[2] The Court may take judicial notice of state agency press releases and guidance as matters that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2); *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1223 n.2 (9th Cir. 2004) (citing *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986)).

Page 4    -    DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

Beverage containers covered by the Bottle Bill are identified by three separate variables. First, not every *beverage* may be returned for a refund in Oregon. Before the 2018 amendments, the Bottle Bill authorized deposit refunds for water, beer, and carbonated soft drinks. ORS 459A.702(1). The 2018 amendments significantly expanded the beverages subject to the Bottle Bill to include all other beverages except for distilled liquor, wine, milks, infant formula, and other exemptions as defined by the OLCC. ORS 459A.702(2). New beverages subject to the Bottle Bill included tea, coffee, cider, juice, energy drinks, coconut water and, relevant here, chocolate drink and punch. *See* OLCC Guidance.

Second, not all *sizes* of beverage containers are eligible for a refund. For water, beer, and soft drinks, containers in sizes of three liters or less are included. ORS 459A.702(1). For beverages added in 2018 sizes are more restricted, ranging from four ounces to 1.5 liters. ORS 459A.702(2)(b). This would include the drink sizes Plaintiff claims she purchased at Walgreens.

Third, not all beverage *containers* may be returned for a refund. For water, beer, and soft drinks, individual, separate, sealed glass, metal, plastic bottle, or can containers are subject to the Bottle Bill, while cartons, foil pouches, and drink boxes are excluded. ORS 459A.702(1). For the new beverages added in 2018, the same rules apply except that metal containers requiring a tool to open also are excluded. ORS 459A.702(2). Although Plaintiff does not allege it, it appears that this may be the reason that the beverage containers at issue were not eligible for a refund under the Bottle Bill, because they were boxed drinks.

The OLCC has exclusive authority to enforce the Bottle Bill. ORS 459A.717. The OLCC may impose civil penalties of $50 to $500 for violations of the law. There is no private right of action to enforce the Bottle Bill.

Page 5    -    DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

**B.    The UTPA.**

The same year the Bottle Bill was enacted, Oregon enacted the UTPA.  Since then, the Legislature periodically has added practices or conduct that it has determined are "unlawful trade practices."  The UTPA now lists at least 91 separate acts that constitute violations of the UTPA. *See* ORS 646.607(1)-(12); ORS 646.608(1)(a)-(aaaa).  In this respect, the UTPA is very different from other states' consumer protection statutes that are "little FTC Acts" broadly prohibiting deceptive conduct and leaving it to the courts to determine in a given circumstance whether conduct violates consumer protection laws.  *Cf.* Wash. Rev. Code § 19.86.020 (Washington Consumer Protection Act prohibiting "unfair or deceptive acts or practices in the conduct of any trade or commerce").  The UTPA does include a general "catch all" provision prohibiting "unfair or deceptive conduct," but an action cannot be brought under that section absent the Attorney General promulgating a rule declaring specific conduct in violation of the UTPA.  *See* ORS 646.608(1)(u), (4).

The laundry list of UTPA violations is varied.  Many UTPA provisions, like those referenced in the Amended Complaint, prohibit false or misleading representations of various kinds concerning "real estate, goods or services."  *See, e.g.,* ORS 646.608(1)(b), (e), (i), (s), (t). The UTPA also incorporates many other statutes, making a violation of those laws also a violation of the UTPA.  *See* ORS 646.608(1)(aa)-(aaaa).  In addition, the UTPA includes prohibitions or limitations on certain types of charges.  *See, e.g.,* ORS 646.608(1)(nn) (limiting fees in lease-purchase agreements); ORS 646.608(1)(rr) (limiting late fees for cable services); ORS 646.608(1)(kkk) (limiting debt management service provider fees).  Importantly, the UTPA does not incorporate the Bottle Bill, or otherwise apply to bottle deposit charges.  Nor has the Attorney General enacted any rules under the UTPA relating to the Bottle Bill.

Page 6    -    DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

C.    **The Amended Complaint.**

The amendments to the Bottle Bill took effect January 1, 2018.  On May 31, 2018, Plaintiff alleges she purchased Hawaiian Punch and Yoohoo chocolate drink for her family at a Walgreens in Salem, Oregon.  (Am. Compl. ¶ 9.)  She contends Walgreens charged a separate 10-cent "Bottle Deposit" for the Hawaiian Punch and Yoohoo containers purchased as depicted on her receipt.  (*Id.*)  Plaintiff claims she later learned that the beverage containers were not eligible for a 10-cent refund under the Bottle Bill.  (*Id.* ¶ 10.)  She decided she "was not going to let Walgreens get away with what she perceived was an unfair and unjust practice," and retained a "consumer protection attorney" to investigate.  (*Id.* ¶ 11.)  By June 7, 2018, she had filed this class action lawsuit seeking in excess of $5 million.

The Amended Complaint claims that Walgreens violated the Bottle Bill by charging 10-cent deposits for exempt beverage containers.  But recognizing that there is no cause of action for violating the Bottle Bill, Plaintiff attempts to recast the alleged Bottle Bill violations as violations of the UTPA.  For example, Plaintiff claims that Walgreens violated ORS 646.608(1)(b) by "causing the likelihood of confusion and misunderstanding as to whether the source of the additional 10-cent charge it added to the price of exempt beverages was mandated by the Oregon bottle deposit law."  (Am. Compl. ¶ 14.)  Plaintiff also claims that Walgreens violated the UTPA by representing that "the exempt beverages would be redeemable in the amount of the 10-cent charge."  (*Id.* ¶ 16.)  All told, Plaintiff asserts that Walgreens violated six separate UTPA provisions.

Plaintiff does not contend that either drink was worth less as a result of the alleged misrepresentations concerning the bottle deposit charge, nor does she claim she would not have purchased the Hawaiian Punch or Yoohoo had she known she could not return the containers for

a 10-cent deposit.  For her remedy, Plaintiff seeks a windfall in excess of $5 million in the form of "$200 statutory damages for every customer ripped off by Walgreens's reckless bottle deposit charge scam," punitive damages, and litigation expenses.  (*Id.* ¶¶ 1, 4, 32.)

## III.  ARGUMENT

### A.    Motion to Dismiss Standard.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This plausibility standard requires a plaintiff to present facts that demonstrate "more than a sheer possibility" that the defendant is liable for the alleged misconduct, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *id.* (citing *Twombly*, 550 U.S. at 555).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).  A complaint also fails if it tenders "naked assertion[s]" without "further factual enhancement." *Twombly*, 550 U.S. at 557.

In order to bring a putative class action for statutory penalties under the UTPA, Plaintiff must plead and prove, among other things, (1) that Walgreens engaged in a practice prohibited by ORS 646.608, (2) that Plaintiff and the class have "sustained an ascertainable loss of money or property as a result of" the violation, and (3) that Walgreens' violations were "reckless or knowing."  ORS 646.638(8)(a).  The Amended Complaint fails to plausibly allege any of these elements, and the UTPA claims should be dismissed for failure to state a claim.

**B.      The Complaint Does Not Allege That Walgreens Engaged in an Unlawful Trade Practice.**

The Complaint alleges that Walgreens violated the Bottle Bill by charging deposits on exempt beverage containers.  But Plaintiff cannot bring claims for Bottle Bill violations because enforcement rests exclusively with the OLCC.  ORS 459A.717.  The UTPA does not make a violation of the Bottle Bill a violation of the UTPA, or otherwise incorporate the Bottle Bill into the UTPA as it does with other statutes and types of charges.  Plaintiff attempts to shoehorn the alleged Bottle Bill charge violations into UTPA provisions, but the shoe does not fit.

**1.      Plaintiff Does Not Allege a Misrepresentation as to "Real Estate, Goods or Services" Required to State a Claim for Violation of ORS 646.608(1)(b), (e), (i), (s) or (t).**

Plaintiff asserts that Walgreens violated ORS 646.608(1)(b), (e), (i), (s), and (t).[3]  Each of these provisions requires a misrepresentation or misleading conduct as to "real estate, goods or services."  For example, ORS 646.608(1)(b) prohibits causing "likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of *real estate, goods or services*."  (Emphasis added.)  ORS 646.608(1)(e) prohibits representing that "*real estate, goods or services* have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that the *real estate, goods or services* do not have."  (Emphasis added.)  And ORS 646.608(1)(i) prohibits "advertis[ing] *real estate, goods or services* with intent not to provide the *real estate, goods or services* as advertised."  (Emphasis added.)

The UTPA defines "real estate, goods or services," in relevant part, as "those that are or may be obtained primarily for personal, family or household purposes."  ORS 646.605(6)(a).  But "[t]he UTPA does not set out separate definitions of 'real estate,' 'goods,' or 'services.'"

---

[3] Plaintiff originally claimed that Walgreens also violated ORS 646.608(1)(g), but dropped that claim in the Amended Complaint.

Page 9    -    DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

*Cullen v. Inv. Strategies, Inc.*, 139 Or. App. 119, 125 n.4, 911 P.2d 936 (1996).  When a statute does not define a term, Oregon courts "assume, at least initially, that the word or phrase has its 'plain, natural, and ordinary' meaning.'"  *In re Comp. of Muliro*, 359 Or. 736, 746, 380 P.3d 270 (2016) (citation omitted).  Typically, this means consulting the dictionary definition of the term, unless "the legislature uses technical terminology, that is, 'terms of art' that are 'drawn from a specialized trade or field[.]'"  *Id.* (quoting *Comcast Corp. v. Dep't of Revenue*, 356 Or. 282, 296, 337 P.3d 768 (2014)).  If the term is a legal one, the court may look "'to its "established legal meaning" as revealed by, for starters at least, legal dictionaries.'"  *Id.* (quoting *Comcast*, 356 Or. at 296).  The court also may consult other statutes that define the terms in question.  *Stevens v. Czerniak*, 336 Or. 392, 401, 84 P.3d 140 (2004) (context of a statute includes "related statutes").

"Goods" is defined the same for both legal and ordinary purposes.  The legal meaning of "goods" is set out in Article 2 of the Uniform Commercial Code as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities and things in action."  ORS 72.1050(1); *see also Goods*, *Black's Law Dictionary* (10th ed. 2014) (defining "goods" as "[t]angible or movable personal property other than money").  The ordinary meaning of "goods" is the same.  *See Webster's Third New Int'l Dictionary* 978 (2002) (defining a "good" as "tangible movable personal property having intrinsic value").

The Amended Complaint, however, does not allege any misrepresentations as to "goods."[4]  It rests on the claim that Walgreens made misrepresentations as to the bottle deposit.  The 10-cent bottle deposit is not a "*good*"—it is a *deposit* or *charge*.  For this reason, Plaintiff's claims do not fit the UTPA provisions she relies upon.

---

[4] Plaintiff cannot reasonably assert that the Amended Complaint alleges misrepresentations as to "real estate" or "services."

Page 10   -   DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

- ORS 646.608(1)(b) prohibits a seller from causing confusion as to the source of "real estate, goods or services," but Plaintiff alleges that Walgreens caused confusion "as to whether the source of the *additional 10-cent charge . . . was mandated by the Oregon bottle deposit law* and whether *the 10-cent charge would be redeemable* when the exempt beverage containers were returned." (Am. Compl. ¶ 14 (emphasis added); *id.* ¶ 15.)

- ORS 646.608(1)(e) prohibits representations that "real estate, goods or services" have characteristics or qualities that they do not have, but Plaintiff alleges that Walgreens misrepresented that the "*10-cent charge*" would be "*redeemable*" when it was not. (*Id.* ¶ 16 (emphasis added).)

- ORS 646.608(1)(t) requires a seller to disclose any material defect or nonconformity in "real estate, goods or services," but Plaintiff does not allege a defect in the goods sold. Instead, she claims Walgreens failed "to disclose that *the bottle deposit* it charged did not conform to Oregon law" and "was not refundable." (*Id.* ¶ 19 (emphasis added).)

These allegations all assert representations concerning the bottle deposit—not the drinks themselves—and thus fail to allege a misrepresentation as to "real estate, goods or services."

Plaintiff's claim that Walgreens violated ORS 646.608(1)(i) fares no better. Subsection (i) prohibits the advertisement of "real estate, goods or services" with an intent not to provide the goods or services as advertised. Plaintiff asserts that Walgreens falsely advertised and made false representations about the cost of exempt beverages by "its failure to disclose that it intended to charge a bottle deposit cost at the register." (Am. Compl. ¶ 17.) But this allegation does not allege any misrepresentation or omission concerning the *goods* themselves (the beverages). It alleges an omission regarding the bottle deposit—which is not a "good." Plaintiff also claims that Walgreens violated subsection (i) "by *advertising its bottle deposits* on exempt items as refundable, with the intent to provide customers beverage containers that could not be returned for a refund." (*Id.*) This too alleges only a misrepresentation as to a bottle deposit, not real estate, goods, or services necessary to allege a violation of ORS 646.608(1)(i).

Plaintiff's ORS 646.608(1)(s) claim fails for the same reason. Subsection (s) prohibits making false or misleading representations about the offering price or cost of "real estate, goods

Page 11   -   DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

or services." Plaintiff claims Walgreens violated subsection (s) by "falsely and misleadingly representing on price tags on its shelves, or at its registers or on its receipts, that the total price of the exempt beverages would be reduced in the amount of the 10-cent bottle deposit charge when the exempt beverage containers were redeemed" when the beverage containers could not be redeemed for a 10-cent refund. (Am. Compl. ¶ 19.) Here, again, Plaintiff alleges no false or misleading representation as to the price of the goods themselves—only misrepresentations or omissions concerning the separate bottle deposit charge. (*Id.* ¶ 9 (reflecting separate "Bottle Deposit" charge on receipt apart from cost of beverages sold).)

At best, Plaintiff has alleged an implied representation concerning a bottle deposit—not "goods"—that cannot support a violation of ORS 646.608(1)(b), (e), (i), (s) or (t).

### 2. Plaintiff Does Not Allege a False or Misleading "Price Reduction" Necessary to State a Claim for Violation of ORS 646.608(1)(j).

ORS 646.608(1)(j) prohibits sellers from making "false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions." Plaintiff asserts that Walgreens violated this provision by falsely representing "that the total price of the exempt beverages would be reduced in the amount of the 10-cent bottle deposit charge when the exempt beverage containers were redeemed for the 10-cent charge." (Am. Compl. ¶ 18.) This claim should be dismissed because subsection (j) does not apply to the facts alleged.

As the Oregon Supreme Court has noted, "the primary target of [subsection (j)] was the practice of luring customers with dubious representations that prices have been 'slashed' by large percentages, sometimes said to be forced by 'going out of business,' 'removal,' or 'fire sales.'" *Sanders v. Francis*, 277 Or. 593, 598, 561 P.2d 1003 (1977). Subsection (j) does not apply here because Plaintiff has not alleged any representation regarding that or any other type of "price reduction." Instead, she alleges that Walgreens impliedly represented the availability of a refund

Page 12   -   DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

of a separate bottle deposit charge.[5]  A refund of a deposit charge on its face is not a reduction in the price of the good itself, and Plaintiff's claim under subsection (j) should be dismissed for this reason alone.  *See Mendoza v. Lithia Motors, Inc.*, No. 6:16-CV-01264-AA, 2018 WL 1513650, at *6 (D. Or. Mar. 27, 2018) (dismissing claim under ORS 646.608(1)(j) because "the alleged misrepresentations do not include price reductions").

Moreover, even if the bottle deposit charge could be deemed a price reduction (it is not), this claim would still fail because subsection (j) does not apply to a misrepresentation of a good's offering price.  In *Denson v. Ron Tonkin Gran Turismo, Inc.*, the plaintiffs complained that an auto repair shop charged more for repairs than the reduced price it had quoted.  279 Or. 85, 87-88, 566 P.2d 1177 (1977) (en banc).  The Oregon Supreme Court held that this misrepresentation did not violate subsection (j).  *Id.* at 91.  Instead, subsection (j) prohibits "the misrepresentation of facts concerning the *normal or regular* price of goods, services, or real estate," as opposed to the reduced offering price.  *Id.* at 92 (emphasis added) (regulations "declare unlawful certain representations as to the reference price and not the offering price").  Like her other UTPA claims, Plaintiff's allegations do not fit the elements of ORS 646.608(1)(j) and this claim should be dismissed.

## C.    Plaintiff Fails to Plead Facts Demonstrating an "Ascertainable Loss" to Her Individually or to the Putative Class.

Even if the alleged implied misrepresentations concerning the 10-cent bottle deposit somehow constituted representations concerning the drinks themselves (the "goods"), Plaintiff fails to allege an "ascertainable loss" of money or property resulting from those misrepresentations.  In her original Complaint, Plaintiff alleged her ascertainable loss was that

---

[5] This contradicts her earlier contention that "Walgreens did *not* disclose its 10-cent deposit charge in the advertisement of the exempt beverages price."  (*See* Am. Compl. ¶ 9 (emphasis added).)

Page 13   -   DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

she paid more for the beverages at Walgreens than she would have paid at another retailer due to the 10-cent charge. (Compl. ¶ 21.) When Walgreens challenged the plausibility of this allegation, Plaintiff changed course and now claims that her ascertainable loss was the 10-cent charge itself, irrespective of the value of the goods purchased at Walgreens. This allegation, however, fails because Plaintiff has not pled a causal connection between the alleged ascertainable loss and the claimed UTPA violation. For this additional reason, Plaintiff's UTPA claims fail.

### 1. A Private Plaintiff Must Allege an Ascertainable Loss Caused by a Violation of the UTPA.

To state a claim under the UTPA, Plaintiff must plead and prove she and the putative class suffered "an ascertainable loss of money or property *as a result of*" reckless or knowing violations of the UTPA. ORS 646.638(8)(a) (emphasis added). An ascertainable loss is one that is "capable of being discovered, observed or established," *Scott v. W. Int'l Surplus Sales, Inc.*, 267 Or. 512, 515, 517 P.2d 661 (1973), and "objectively verifiable, much as economic damages in civil actions must be," *Pearson v. Philip Morris, Inc.*, 358 Or. 88, 117, 361 P.3d 3 (2015). In addition, the "ascertainable loss" must be *caused by* the unlawful trade practice. *Silva v. Unique Beverage Co.*, No. 3:17-cv-00391-HZ, 2017 WL 4896097, at *6 (D. Or. Oct. 30, 2017) (citing *Pearson*, 358 Or. 88). Oregon courts have recognized three primary theories of ascertainable loss under the UTPA—diminished value, purchase price refund, and illegal charge. *Pearson*, 358 Or. at 119-27 (explaining diminished value and purchase price refund theories); *Silva*, 2017 WL 4896097, at *7-11 (same); *Scharfstein v. BP W. Coast Prods., LLC*, 292 Or. App. 69, 89, __ P.3d __ (2018) (explaining illegal charge theory).

Under the diminished value theory of ascertainable loss, a plaintiff must plead and prove that the value of the product received was less than the value of the product represented.

Page 14   -   DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

*Pearson*, 358 Or. at 118-19.  For example, in *Silva*, the district court found that a plaintiff pled ascertainable loss sufficiently because she pled "that the product as represented" (in that case, coconut water) "had a value greater than the value of the product she actually received" (a product without coconut water).  2017 WL 4896097, at *9.

The purchase price refund theory of ascertainable loss requires that the plaintiff plead and prove that "without the misrepresentation, the purchaser would not have bought the product and thus should be entitled to a refund."  *Pearson*, 358 Or. at 126.  Thus, in *Pearson*, the plaintiff contended that she would not have purchased Marlboro Light cigarettes had she known that the cigarettes only delivered lower tar and nicotine if smoked in particular ways.  *Id.* at 125.

The "illegal charge" theory of ascertainable loss was recognized in *Scharfstein*.  In that case, the plaintiff alleged that the defendant illegally charged 35-cent debit fees for debit card gas purchases at its ARCO stations in violation of the UTPA, based on an Attorney General rule promulgated under ORS 646.608(1)(u), because the debit charge was not disclosed on street signs with gas prices.  Plaintiff contended that the 35-cent charge was the ascertainable loss. *Scharfstein*, 292 Or. App. at 88.  The court accepted this claim of "ascertainable loss" without proof that class members paid for more expensive gas (diminished value theory) or that they would not have purchased that gas had the fee been properly disclosed (purchase price refund theory).  *Id.* at 88-89.  But it did so because of the type of UTPA violation alleged:  "[i]n an illegal charge case such as this one, whether a customer relied on the nondisclosure of a fee does not matter; what matters is whether the fee is disclosed in the particular way that the law requires."  *Id.* at 89.

Page 15   -   DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

2.    **The Amended Complaint Fails to Plead an Ascertainable Loss Caused by the Alleged UTPA Violations.**

The Amended Complaint claims that Walgreens violated UTPA provisions by making misrepresentations as to "*goods*," but Plaintiff's alleged ascertainable loss is a 10-cent *charge* not connected to any representations about the goods. Plaintiff fails to plead diminished value or purchase price refund theories of ascertainable loss, and none of the claimed UTPA violations support an illegal charge theory of ascertainable loss recognized in *Scharfstein*.

First, the Amended Complaint makes no allegations that the value of the Yoohoo chocolate drink or Hawaiian Punch received was less than the value of the goods as represented, which would be necessary to allege diminished value ascertainable loss. In the original Complaint, Plaintiff attempted to plead that she paid more than she otherwise would have had she purchased the drinks at another store, but when pressed on this point in the Motion, she abandoned that allegation (probably because Plaintiff realized she could not prove that allegation either on an individual or class-wide basis). Nor does Plaintiff plead, for example, that she attempted to return the beverage containers and was denied the 10-cent charge (probably because Plaintiff does not return beverage containers to recycle centers and recoup the deposit, and could not prove this on a class-wide basis).

Second, Plaintiff has not alleged facts supporting a purchase price refund theory of ascertainable loss either. Plaintiff does not contend in the Amended Complaint that she would not have purchased the drinks for her family had she known the 10-cent bottle charge was not recoverable under the Bottle Bill. Nor could Plaintiff ever prove such a claim on a class-wide basis. *Pearson*, 358 Or. at 136 (affirming denial of class certification on grounds that individualized questions would predominate on claim of purchase price refund ascertainable loss).

Page 16  -    DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

Third, Plaintiff cannot claim the 10-cent charge itself is an ascertainable loss under an illegal charge theory because the UTPA does not apply to the Bottle Bill.  In *Scharfstein*, the court held that the class suffered an ascertainable loss of a 35-cent debit fee charge where the UTPA specifically required such charges be disclosed in a certain manner.  292 Or. App. at 89 (citing ORS 646.608(1)(u) and OAR 137-020-0150, which required disclosure of fees for gas on street signs).  Here, however, Plaintiff cannot point to any UTPA provisions that prohibit or limit bottle bill deposits, because the UTPA does not incorporate the Bottle Bill or any aspect of it.  *Cf.* ORS 646.608(1)(aa)-(aaaa) (incorporating other statutory violations into UTPA).

**D.      Plaintiff Fails to Plead Facts Demonstrating That Walgreens Acted Recklessly or Knowingly in Charging Bottle Deposits for Two Exempt Beverages.**

Lastly, even if the Amended Complaint pled an ascertainable loss resulting from an alleged UTPA violation, Plaintiff has not pled sufficient facts supporting that Walgreens recklessly or knowingly charged the erroneous bottle bill deposits, as would be necessary to sustain a claim for $200 penalties.

An individual plaintiff seeking to recover actual damages based on an alleged UTPA violation must prove that an alleged violation was "willful."  ORS 646.638(1).  "A willful violation occurs when the person committing the violation knew or should have known that the conduct of the person was a violation."  ORS 646.605(10).  This is a very low "intent" threshold. To bring a class action seeking $200 in statutory damages, however, the burden on the plaintiff increases substantially.  Instead of a "willful" violation, a plaintiff must plead and prove that the alleged UTPA violation was "reckless or knowing."  ORS 646.638(8)(a).  Oregon courts have defined "reckless" conduct in the civil context as conduct in which "'the actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, and which thus is usually

Page 17   -   DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

accompanied by a conscious indifference to the consequences.'" *ZRZ Realty Co. v. Beneficial Fire & Cas. Ins. Co.*, 222 Or. App. 453, 483, 194 P.3d 167 (2008) (quoting *Youell v. Exxon Corp.*, 48 F.3d 105, 110-11 (2d Cir. 1995)); *see also Hickey v. Settlemier*, 141 Or. App. 103, 107 n.4, 917 P.2d 44 (reckless conduct means conduct undertaken "with a high degree of awareness of its probable" culpability (internal quotation marks and citation omitted)), *review denied*, 323 Or. 690, 920 P.2d 549 (1996).

"Knowing" conduct is even more difficult to plead and prove.  To act knowingly "ordinarily means that the act or omission was intentional."  *State ex rel. State Game Comm'n v. Gold Hill Irr. Dist.*, 18 Or. App. 99, 105, 523 P.2d 1287 (1974) (internal quotation marks and citation omitted).  For example, in *Weigel v. Ron Tonkin Chevrolet Co.*, 298 Or. 127, 139, 690 P.2d 488 (1984), the Oregon Supreme Court explained that an intentional violation of the UTPA is one that is "'calculated and deliberate.'"

The failure to plead specific facts demonstrating "reckless or knowing" conduct is grounds for dismissal of a UTPA claim.  This District's decision in *Hamilton v. General Mills, Inc.* is on point.  In that case, the plaintiff alleged that the defendant violated the UTPA by selling gluten-free Cheerios that were contaminated with wheat flour.  No. 6:16-CV-382-MC, 2016 WL 4060310, at *1 (D. Or. July 27, 2016).  In dismissing the plaintiff's UTPA claims, Judge McShane found that the plaintiff had not alleged recklessness or knowledge with regard to the contaminated Cheerios.  *Id.* at *6.  At best, the plaintiff alleged only that General Mills had "made a mistake, not that it recklessly or knowingly engaged" in misconduct necessary to bring a UTPA claim.  *Id.*  Although Judge McShane allowed the plaintiff a chance to replead, he dismissed the amended complaint for the same reason.  All the plaintiff could allege was "an isolated" contamination event—not reckless or knowing misconduct.  *See Hamilton v. Gen.*

Page 18    -    DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

*Mills, Inc.*, No. 6:16-CV-382-MC, 2016 WL 6542840, at *2 (D. Or. Nov. 2, 2016) (dismissing amended pleading on same grounds).

In its initial Motion, Walgreens argued that Plaintiff had alleged *no facts* underlying her conclusory allegations that Walgreens had engaged in reckless or knowing violations.  The allegations from her initial Complaint—and repeated in the Amended Complaint—do not support a properly pleaded claim for conduct that was "reckless, in pursuit of profit," and that "constituted wanton, outrageous and oppressive violation of the rights of Ms. Gilberto and the putative class members to be free from unlawful trade practices."  (Am. Compl. ¶ 32.)  Plaintiff only provides the conclusory allegation that Walgreens "knew it could not charge customers a 10-cent deposit on exempt beverages and chose to do so anyway" (*id.* ¶ 21), but such "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Moreover, other allegations in the Amended Complaint undermine the bald assertion that Walgreens engaged in a "reckless bottle deposit charge scam."  (Am. Compl. ¶ 1.)  Of the thousands of beverages sold at Walgreens, Plaintiff identifies only two types that were erroneously charged a bottle deposit:  Hawaiian Punch and Yoohoo chocolate drink.  This is exactly the sort of isolated conduct found insufficient to state a knowing or reckless violation claim in *Hamilton*.  Nor do Plaintiff's profit-motive allegations provide support for reckless or knowing conduct.  While the Court analyzes well-pleaded facts in the light most favorable to the nonmoving party, "the reviewing court [may nonetheless] draw on its judicial experience and common sense" in assessing the plausibility of a plaintiff's allegations.  *Iqbal*, 556 U.S. at 679.  It is simply implausible on its face that Walgreens would institute a "bottle deposit scam" in the

Page 19   -   DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

few states that require bottle deposit refunds as a way of increasing corporate profit one 10-cent juice box at a time.

Plaintiff's allegation that she complained to Walgreens before filing this lawsuit also is insufficient to allege reckless or knowing conduct. Although the Amended Complaint is silent as to when Plaintiff complained or what information she provided to Walgreens, it alleges she bought the beverages on May 31, 2018, and filed this lawsuit on June 7, 2018. (Am. Compl. ¶ 9.) This tight timeline does not plausibly support a knowing violation of the UTPA. Under Oregon state law, a plaintiff must provide a defendant 30 days' specific notice of the alleged violations and an opportunity to cure before rushing into court with a class action lawsuit for damages. *See* ORCP 32 H, I. Plaintiff did not provide any such notice in this case, and it appears she chose federal court (rather than state court) to attempt to avoid Walgreens' right to pre-suit notice and to cure any possible problems identified in such a notice.[6]

After the Motion and in apparent recognition of her failure to plead any facts supporting a finding of reckless or knowing conduct, Plaintiff added allegations to her Amended Complaint including references to (1) an Illinois case accusing Walgreens of overcharging for generic drugs, (2) a 2015 lawsuit in New York over Walgreens' alleged failure to accept bottle returns, and (3) an OLCC fine against Walgreens from last year for violation of the Bottle Bill. None of these allegations, however, have anything to do with the facts of this case, and none of them come close to providing facts that would indicate reckless or knowing conduct.

---

[6] ORCP 32 H requires that a proposed class representative provide 30 days' notice to a defendant before commencing a class action for damages, including notice of the alleged violation and a demand that the defendant correct or rectify the alleged wrong. ORCP 32 I then permits a defendant to avoid a class action altogether by curing the alleged wrong. Plaintiff did not comply with ORCP 32 H or I in bringing this lawsuit in violation of Walgreens' rights under Oregon law. Walgreens will raise this defense and present the supporting evidentiary record at an appropriate procedural point in the case if necessary.

Page 20  -  DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

The Illinois case is unrelated to the Bottle Bill or any similar statute, and there has been no liability imposed against Walgreens. *See Forth v. Walgreen Co.*, No. 1:17-cv-02246, 2018 WL 1235015 (N.D. Ill. Mar. 9, 2018). The case involves an allegation that Walgreens charged too much for generic prescription drugs, and Plaintiff cites it for the proposition that Walgreens "was well aware that the law prohibited deceptive sales practices." (Am. Compl. ¶ 21.) But Walgreens is not claiming it is not aware of consumer protection laws. And the case provides no factual basis supporting that Walgreens knew the beverages purchased by Plaintiff were not subject to the Bottle Bill, but charged her anyway as part of a "bottle deposit scam."

The New York lawsuit cited in the *New York Times* article also is inapposite. *See* Ex. 2 to Snider Decl. It involved allegations that Duane Reade stores in New York were not allowing consumers to return eligible containers for refunds of their deposits. Those allegations too have no relationship to whether Walgreens acted recklessly or knowingly in allegedly charging erroneous bottle deposits on Yoohoo chocolate drink and Hawaiian Punch.

Finally, the fine issued to Walgreens by the OLCC last year also does not provide any support for reckless or knowing conduct in this case. That fine resulted from the failure of certain Walgreens stores to participate in redemption centers—not from anything to do with sales or deposit charges. *See* OLCC News Release, Ex. 3 to Snider Decl. In fact, the OLCC specifically thanked Walgreens for its "full participation" and noted that the company had been working with regulators but, "[f]or business reasons, they could not comply with the required timelines." *Id.*[7]

---

[7] The Court may consider the OLCC press release on a motion to dismiss. *See* Footnote 2 *supra.* In addition, it may consider the *Times* article on a motion to dismiss because it was specifically alleged in the Amended Complaint. *See, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994),

Page 21  -  DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

Neither the original Complaint nor the Amended Complaint alleges facts supporting any reckless or knowing UTPA violations by Walgreens.  For this additional reason, Plaintiff's UTPA claims seeking $200 penalties for herself and a putative class should be dismissed.

## IV.  CONCLUSION

For all of these reasons, Walgreens respectfully requests that the Court grant this motion and dismiss Plaintiff's UTPA claims.

DATED:  August 28, 2018.

STOEL RIVES LLP


/s/ Timothy W. Snider
TIMOTHY W. SNIDER, OSB No. 034577
timothy.snider@stoel.com
STEPHEN H. GALLOWAY, OSB No. 093602
stephen.galloway@stoel.com
Telephone:  503.224.3380

Attorneys for Defendant

---

*overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

Page 22   -    DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT