**Michael Fuller, OSB No. 09357**
OlsenDaines
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Direct 503-743-7000

**Kelly D. Jones, OSB No. 074217**
kellydonovanjones@gmail.com
Direct 503-847-4329

**Young Walgenkim, OSB No. 124900**
www.hansonwalgenkim.com
Direct 541-772-8050

Of Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **HEATHER GILBERTO**, individually and on behalf of other consumers, | Case No. 3:18-cv-01003-AC |
| | **PLAINTIFFS' OBJECTIONS TO FINDINGS & RECOMMENDATIONS** |
| Plaintiff, | |
| v. | |
| **WALGREEN CO.**, | Oral Argument Requested |
| Defendant. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... 3

INTRODUCTION ............................................................................. 6

STANDARD OF REVIEW .................................................................. 7

LEGAL STANDARDS ....................................................................... 7

    1. Motion to dismiss ...................................................................... 7

    2. UTPA ....................................................................................... 8

OBJECTIONS TO FINDINGS AND RECOMMENDATIONS ............. 8

    1. Plaintiff's sufficiently alleges multiple violations of ORS 646.608(1) ............................................................................... 8

        1.1 ORS 646.608(1)(b) ............................................................ 12

        1.2 ORS 646.608(1)(e) ............................................................ 17

        1.3 ORS 646.608(1)(i) ............................................................. 25

        1.4 ORS 646.608(1)(j) ............................................................ 27

        1.5 ORS 646.608(1)(s) ............................................................ 30

        1.6 ORS 646.608(1)(t) ............................................................ 32

    2. Plaintiff sufficiently alleges ascertainable loss as a result of Walgreen violations of ORS 646.608(1) ................................... 33

    3. Walgreen's willfulness and recklessness................................... 39

CONCLUSION.................................................................................. 42

# TABLE OF AUTHORITIES

**Cases**

*Accident Care Specialists of Portland, Inc. v. Allstate Fire & Cas. Ins. Co.*,
No. 3:11-cv-01033-MO, 2014 WL 2747632, 2014 U.S. Dist. LEXIS 82228 (D. Or. June 16, 2014) ...........................................14

*Andriesian v. Cosmetic Dermatology, Inc.*,
No. 3:14-cv-01600-ST, 2015 U.S. Dist. LEXIS 50502, 2015 WL 1638729 (D. Or. Mar. 3, 2015), *adopted*, 2015 U.S. Dist. LEXIS 55149, 2015 WL 1925944 (D. Or. Apr. 28, 2015) .......................22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................7

*Bartz v. State*,
314 Or. 353 (1992) .........................................................26, 33, 41

*BP W. Coast Prods., LLP v. Or. DOJ*,
284 Or. App. 723 (2017) ................................................................8

*Caldwell v. Pop's Homes, Inc.*,
54 Or. App. 104 (1981) ...........................................................23, 24

*Christofferson v. Church of Scientology*,
57 Or. App. 203 (1982) ................................................................33

*Daniel N. Gordon, Prof'l Corp. v. Rosenblum*,
276 Or. App. 797 (2016) ...........................................................8, 16

*Denson v. Ron Tonkin Gran Turismo, Inc.*,
279 Or. 85 (1977) ...........................................................8, 28, 29

*Dungey v. Fairview Farms, Inc.*,
205 Or. 615 (1955) .......................................................................26

*Feitler v. Animation Celection, Inc.*,
170 Or. App. 702 (2000) .....................................................passim

*Fowler v. Cooley*,
239 Or. App. 338 (2010) ..............................................................14

*Gordon v. Rosenblum*,
361 Or. 352 (2017) .......................................................................16

*Hamilton v. Gen. Mills, Inc.*,
No. 6:16-cv-382-MC, 2016 U.S. Dist. LEXIS 152425 (D. Or. Nov. 2, 2016)........................................................................................40

*Hinds v. Paul's Auto Werkstatt, Inc.*,
107 Or. App. 63 (1991) ................................................................10

*Horton v. Nelson,*
    252 Or. App. 611 (2012) .............................................................27

*Martin v. Cahill,*
    90 Or. App. 332 (1988) ..............................................................37

*Paul v. Providence Health Sys., Or.,*
    237 Or. App. 584 (2010) ............................................................34

*Pearson v. Philip Morris, Inc.,*
    358 Or. 88 (2015) ................................................................ passim

*Rathgeber v. James Hemenway, Inc.,*
    335 Or. 404 (2003) ....................................................................10

*Raudebaugh v. Action Pest Control, Inc.,*
    59 Or. App. 166 (1982) ..........................................................8, 14

*Russell v. Ray Klein, Inc.,*
    No. 1:19-CV-00001-MC, 2019 WL 6137455, 2019 U.S. Dist.
    LEXIS 200300 (D. Or. Nov. 19, 2019)..........................................9

*Scott v. W. Int'l Surplus Sales, Inc.,*
    267 Or. 512 (1973) ....................................................................38

*Shroyer v. New Cingular Wireless Servs., Inc.,*
    622 F.3d 1035 (9th Cir. 2010) .....................................................7

*Silva v. Unique Bev. Co.,*
    No. 3:17-cv-00391-HZ, 2017 U.S. Dist. LEXIS 93625 (D. Or.
    June 15, 2017) ..........................................................................11

*Silva v. Unique Bev. Co.,*
    No. 3:17-cv-00391-HZ, 2017 U.S. Dist. LEXIS 179362 (D. Or.
    Oct. 30, 2017)...........................................................................23

*Simonsen v. Sandy River Auto LLC,*
    290 Or. App. 80 (2018) ..............................................................37

*State ex rel. Redden v. Discount Fabrics,*
    289 Or. 375 (1980) ....................................................................24

*State ex rel. Rosenblum v. Johnson & Johnson,*
    275 Or. App. 23 (2015) ...................................................14, 18, 20

*Tri-West Constr. Co. v. Hernandez,*
    43 Or. App. 961 (1979) ................................................................9

*Weigel v. Ron Tonkin Chevrolet Co.,*
    298 Or. 127 (1984) ....................................................................34

*Wilson v. Hewlett–Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012) ..................................................7, 42

**Statutes**

15 U.S.C. § 1635 ............................................................................9

Bottle Bill, ORS 459A.700, *et seq.* ...................................passim

Or. Rev. Stat. § 18.999(4)(a)(H) .............................................10

ORS 83.710, *et seq.* .......................................................................9

ORS 459A.702(2) ..................................................................11, 41

ORS 646.605(6) ............................................................................17

ORS 646.605(10) .........................................................................40

ORS 646.608(1) ....................................................................passim

ORS 646.608(1)(b) ...............................................................passim

ORS 646.608(1)(e) ...............................................................passim

ORS 646.608(1)(i) ............................................12, 25, 27, 29

ORS 646.608(1)(j) ...............................................................passim

ORS 646.608(1)(s) ...............................................................passim

ORS 646.608(1)(t) ...........................................................12, 32, 33

ORS 646.608(1)(u) ........................................................................9

ORS 646.608(2) ...........................................................................12

ORS 646.612(1) ...........................................................................10

ORS 646.638(1) ....................................................................11, 40

ORS 646.638(8) ...........................................................................40

**Rules**

FRCP 9(b) ................................................................................27, 41

FRCP 72(b)(3) ................................................................................7

**Other Authorities**

*Webster's Third New International Dictionary Unabridged* ...........21, 22

# INTRODUCTION

On June 17, 2018, Heather Gilberto (Ms. Gilberto or plaintiff) filed a class action allegation complaint against Walgreen, Co. (Walgreen or defendant) on behalf of herself and other Oregon consumers. Doc. 1. On August 14, 2018, as a matter of right, plaintiff filed a First Amended Complaint (complaint). Doc. 11. Plaintiff's complaint seeks relief for Walgreen's unjust enrichment and its alleged violations of Oregon's Unlawful Trade Practices Act (UTPA) because she and the putative class paid 10 cents more for certain beverages that Walgreen misrepresented and caused the likelihood of confusion that the empty beverage containers could be returned for 10 cents when in fact they could not be returned for 10 cents.

On August 28, 2018, Walgreen filed a motion to dismiss plaintiff's UTPA claim. Doc. 13. On September 25, 2018, plaintiff filed her response to the motion to dismiss. Doc. 18. On November 20, 2019, the Magistrate Judge issued Findings and Recommendations (F&R), granting dismissal of plaintiff's UTPA claim with leave to file a second amended complaint "to remedy the deficiencies" as set forth in the F&R. Doc. 30.

Here, plaintiff objects to the F&R in its entirety, with exception of the finding that plaintiff sufficiently alleged an actionable violation of ORS 646.608(1)(s). *See* Doc. 30 at 25-27. In addition to these objections,

plaintiff incorporates her response to the motion to dismiss including all of the arguments set forth in that response. Doc. 18.

## STANDARD OF REVIEW

When a party objects to any portion of a Magistrate Judge's findings and recommendations, the district court must review de novo the portions of the findings and recommendations to which objections are made. 28 U.S.C. § 636(b)(1)(C); FRCP 72(b)(3).

## LEGAL STANDARDS

### 1.    Motion to dismiss

A motion to dismiss for failure to state a claim may be granted when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). A claim is plausible on its face if the factual allegations in the complaint allow a court to reasonably infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating the sufficiency of a complaint's factual allegations, a court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the nonmoving party. *See Wilson v. Hewlett–Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).

### 2. UTPA

As a consumer protection statute, the UTPA is to be interpreted liberally in favor of consumers. *Denson v. Ron Tonkin Gran Turismo, Inc.*, 279 Or. 85, 90 n.4 (1977). "'The general policy of the UTPA is to discourage deceptive trade practices and to provide a viable remedy for consumers who are damaged by such conduct.'" *Daniel N. Gordon, Prof'l Corp. v. Rosenblum*, 276 Or. App. 797, 814 (2016) (quoting *Raudebaugh v. Action Pest Control, Inc.*, 59 Or. App. 166, 171 (1982)). "The legislative history of the [UTPA] reveals that it is to be interpreted liberally as a protection to consumers" and "when the legislature enacted the UPTA, the primary purpose of the Act was to protect consumers, rather than businesses." *BP W. Coast Prods., LLP v. Or. DOJ*, 284 Or. App. 723, 736-37 (2017) (internal quotes and citations omitted).

## OBJECTIONS TO FINDINGS AND RECOMMENDATIONS

### 1. Plaintiff sufficiently alleges multiple violations of ORS 646.608(1)

The F&R starts out its analysis by noting that neither the Oregon legislature nor the Oregon Attorney General has adopted a specific provision of the UTPA targeting conduct related to Oregon's Bottle Bill (ORS 459A.700, *et seq.*) and therefore plaintiff must demonstrate that Walgreen's conduct, independent of violating the Bottle Bill, violates Section 1 (of ORS 646.608). Doc. 30 at 12. There is nothing objectionable

or novel about this declaration because that is the basis of plaintiff's UTPA claim.

Plaintiff does not allege a UTPA count under ORS 646.608(1)(u) and does not allege a violation of the Bottle Bill. She alleges that Walgreen violated six separate subsections of ORS 646.608(1). That the legislature has not opted to adopt a narrow UTPA provision under Section 1, or the Attorney has not decided to engage in rulemaking, to provide a narrow violation addressing Walgreen's specific unlawful conduct here is irrelevant. There is nothing unique about a plaintiff asserting claims under the general provisions in Section 1, and in fact a short review of the case law would indicate that the vast majority of UTPA claims allege violations of the general provisions of Section 1.

There is also nothing particularly noteworthy or legally significant about bringing a UTPA based on conduct not in compliance with, and misrepresentations about, another law. *See, e.g., Tri-West Constr. Co. v. Hernandez,* 43 Or. App. 961, 971-72 (1979) (holding that plaintiff stated a viable claim based on the defendants' misrepresentations about plaintiff's right to rescind a contract which was inconsistent with federal law (15 U.S.C. § 1635) and state law (ORS 83.710, *et seq.*)); *Russell v. Ray Klein, Inc.,* No. 1:19-CV-00001-MC, 2019 WL 6137455, 2019 U.S. Dist. LEXIS 200300, at *5 (D. Or. Nov. 19, 2019) (holding that the (putative class) plaintiff stated a viable claim under

ORS 646.608(1)(b) in alleging that the defendant "misrepresented that Or. Rev. Stat. § 18.999(4)(a)(H) authorized Defendants to recover an additional $45 attorney's fee, when, in fact, Defendants never 'actually paid' an attorney to issue the garnishment.").

In fact, the legislature specifically excluded from the UTPA "conduct in compliance with the orders or rules of, or a statute administered by a federal, state or local governmental agency." ORS 646.612(1). Oregon courts have construed this exception to be applicable "to exempt only conduct that is mandated by other laws." *Hinds v. Paul's Auto Werkstatt, Inc.*, 107 Or. App. 63, 67 (1991); *Rathgeber v. James Hemenway, Inc.*, 335 Or. 404, 410-11 (2003) (finding that although an Oregon law required defendants to give plaintiffs a disclosure form, plaintiffs' UTPA claim under ORS 646.608(1)(e) based on defendants' "representation that [they] would fulfill certain fiduciary duties identified on the statutory disclosure form and [their] subsequent failure to do so" was not barred by ORS 646.612(1) because "[n]o statute required [defendants] to breach [their] fiduciary duty to plaintiffs or act in any manner that was inconsistent with that duty.").

Thus, it is clear from the case law and the statute itself that conduct that misrepresents or causes the likelihood of confusion about, is not in compliance with, or and is not mandated by another law can form the basis of a viable UTPA claim. Here, there is no debate that the

drink boxes that plaintiff purchased were exempted from the Bottle Bill deposit scheme and were not redeemable for 10 cents; thus Walgreen's representations about the goods it sold to plaintiff were false because the goods were not redeemable for 10 cents under the Bottle Bill. *See* ORS 459A.702(2) (excluding "cartons, foil pouches, drink boxes"); Doc. 20 (conceding that plaintiff "should proceed on her claim for return of any improperly charged 10-cent Bottle Deposits under common law"). In fact, the 2018 amendments to the Bottle Bill "did not discard or otherwise revise the exemption of cartons, foil pouches, or drink boxes from the refund requirements" of the statute—these goods were *always* exempt and non-redeemable.

To prevail in a private consumer claim under ORS 646.638(1), a plaintiff must prove: "(1) a violation of ORS 646.608(1); (2) causation ('as a result of'); and (3) damage ('ascertainable loss')." *Feitler v. Animation Celection, Inc.*, 170 Or. App. 702, 708 (2000); *Silva v. Unique Bev. Co.,* No. 3:17-cv-00391-HZ, 2017 U.S. Dist. LEXIS 93625, at *23-24 (D. Or. June 15, 2017); ORS 646.638(1). A defendant violates ORS 646.608(1) when if in the course of the [defendant's] business, vocation, or occupation the person does any of the following acts or omissions set forth in the "laundry list" of general and more specific subsections of Section 1. "A representation under [ORS 646.608(1)] may be any

manifestation of any assertion by words or conduct, including, but not limited to, a failure to disclose a fact." ORS 646.608(2).

Here, plaintiff alleges that Walgreen violated ORS 646.608(1)(b), (e), (i), (j), (s), and (t)[1] in regard to consumer goods—specifically Yahoo and Hawaiian Punch drink boxes—it sold to her in its business as a large consumer retailer. Doc. 11 at ¶¶ 9, 19-23.

Each of plaintiff's six UTPA counts is based upon the same unlawful conduct engaged by Walgreen. When plaintiff sold the drink boxes to plaintiff it misrepresented "on the price tags on its shelves, or at its registers or on its receipts" that each drink box cost 10 cents more, because plaintiff would be able to collect 10 cents upon returning the empty drink boxes. Doc. 11 at ¶¶ 9-20. These representations about the drink boxes (goods) it sold to plaintiff and the putative class were false.

### 1.1 ORS 646.608(1)(b)

Defendant's acts and omissions violated ORS 646.608(1)(b) by "causing the likelihood of confusion and misunderstanding as to whether the source of the additional 10-cent charge it added to the price of the exempt beverages was mandated by Oregon bottle deposit law and whether the 10-cent charge would be redeemable when the exempt

---

[1] Plaintiff concedes that ORS 646.608(1)(b), (1)(e), and (1)(s) are probably the most obvious fit for this case, but there is no legal or factual basis to find that the conduct alleged here does not also violate subsections (1)(i), (1)(j), and (1)(t) as well.

beverage containers were returned" and by "causing the likelihood of confusion and misunderstanding that the 10-cent charge it added to the price of the exempt beverages was approved or certified by the Oregon legislature through the Oregon bottle deposit law and whether the 10-cent charge would be redeemable when the exempt beverage containers were returned." Doc. 11 at ¶¶ 14-15.

The F&R reasons that because plaintiff "alleges Walgreen caused confusion or misunderstanding as to the source, sponsorship, approval, or certification of the ten-cent bottle deposit, which is not a 'good' within the meaning of the UTPA, ORS 646.608(1)(b) the facts alleged fail to state an actionable violation of ORS 646.608(1)(b)." Doc. 30 at 18. This is incorrect because the basis of plaintiff's (1)(b) count is that Walgreen caused the likelihood of confusion or misunderstanding about the drink boxes—which are clearly goods.

The statute simply defines "[r]eal estate, goods or services" as "those that are or may be obtained primarily for personal, family or household purposes, or that are or may be obtained for any purposes as a result of a telephone solicitation, and includes loans and extensions of credit, and franchises, distributorships and other similar business opportunities, but does not include insurance." This definition is purposefully general to carry out the legislative intent of providing broad remedial protection for consumers. For example, dictionary

definitions of the word "real estate, goods, or services" would also not include "franchises, distributorships, and other similar business opportunities" This broad definition of "real estate, goods, and services" is meant to exclude real estate, goods, or services that are obtained for a business or commercial purpose rather than for personal use. *See Fowler v. Cooley*, 239 Or. App. 338, 344 (2010); *Accident Care Specialists of Portland, Inc. v. Allstate Fire & Cas. Ins. Co.*, No. 3:11-cv-01033-MO, 2014 WL 2747632, 2014 U.S. Dist. LEXIS 82228, at *13-14 (D. Or. June 16, 2014).

Moreover, the statement in the F&R that "there is no statutory language from which the court could infer that ORS 646.608(1)(b) applies to such confusion or misunderstanding as to the source or approval of anything so long as it arises in connection with the sale of real estate, goods and services" is incorrect, as interpreted by Oregon appellate courts. Doc. 30 at 17; *see State ex rel. Rosenblum v. Johnson & Johnson*, 275 Or. App. 23, 33 (2015) (holding that "[t]he UTPA authorizes action against a panoply of deceptive and unsafe business practices, including, among other things, misrepresentations *made in connection with the sale of goods*" (emphasis added)); *Raudebaugh*, 59 Or. App. at 176 ("ORS 646.608(1) is directed at consumer transactions. It does not, to be sure, strictly limit its liability to sellers of real estate,

goods or services. Still, the alleged unlawful practice must occur *in connection with a sale* in order for the Act to apply.").

This artificial separation between the drink boxes (the goods) and the false representations regarding the 10-cent charge or false "deposit" fee and the redeemability advocated by Walgreen and adopted by the F&R is not legally cogent. There would have been no 10-cent "deposit" charge or representations about the 10-cent redeemability without the purchase of the drink boxes. *See* Doc. 30 at 26 (in discussing plaintiff's subsection (1)(s) count the F&R notes that "[t]he additional charges, however, were labeled 'BOTTLE DEPOSIT' and charged in tandem with the beverages. Given such circumstances, a reasonable consumer would assume the additional charges assessed on top of the purchase price were refundable in the event the empty beverage containers were returned"); Doc. 30 at 20 (in discussing plaintiff's subsection (1)(e) count the F&R reasons that "[a]s a general proposition, the court notes that a product's packaging is part of that product, and therefore part of the 'good' under the UTPA").

Directly and indirectly representing that the drink boxes cost 10 cents more because they could be returned for 10 cents would objectively cause the likelihood of misunderstanding that what Walgreen represented was true: that the legislature approved and certified that the drink boxes were subject to the mandatory 10-cent charge and that

the drink boxes could thus be redeemed for 10 cents. But that was false. The Bottle Bill continues to exempt the drink boxes that were sold to plaintiff—through it the legislature did not approve or certify the additional 10 cents that Walgreen added on to the cost of the drink boxes or make the drink boxes redeemable for 10-cents.

Plaintiff cited to *Gordon v. Rosenblum* to give one example of what the Oregon Supreme Court found to be "alleged conduct [that] comes within a straightforward interpretation of ORS 646.608(1)(b)." 361 Or. 352, 369 (2017). A more detailed look into the conduct found to violate subsection (1)(b) in *Gordon*[2] indicates that the defendant law firm engaged in "conduct [which] could have caused debtors to have likely confusion or misunderstanding about, for example, the interest rate applicable to the debt or whether the debtors would have to pay the debt owners' attorneys' fees" when it sought these items in the complaints it filed and served on debtors. *Id.* at 368-69; *see also Daniel N. Gordon,* 276 Or. App. at 805 (the Attorney General alleged that "646.608(1)(b) applied to [the debt collection law firm] because they allegedly caused or created confusion about the source and certification

---

[2] The F&R states that plaintiff "quotes the passage above [from *Gordon*] in her brief, but she provides no argument or analysis to explain how *Gordon* supports the reading of ORS 646.608(1)(b) she advances", so she does so here. Doc. 30 at 16.

of debts they collected, including rights to attorney fees, interest or other charges").

The subsection (1)(b) violation that the *Gordon* court held was "straightforward" is much less straightforward than plaintiff's (1)(b) count here. In *Gordon*, the law firm's representations that caused the likelihood of confusion or misunderstanding were about its own attorney fees and other charges it was adding on to the underlying debt (loan or extension of credit).[3] That the attorney fees and other charges themselves cannot be defined as a loan or extension of credit did not mean that the Attorney General could not state an actionable (1)(b) claim—the fees were related to the underlying loan or extension of credit. Here, the additional 10-cent charge and the false promise that the drink boxes could be redeemed for 10 cents is much more closely related to (and in fact inseparable from) the goods themselves.

Plaintiff has sufficiently alleged a plausible UTPA count under ORS 646.608(1)(b). Whether Walgreen's misrepresentations about the drink boxes would objectively cause the likelihood of confusion or misunderstanding that the 10-cent addition charge added to the cost and the supposed redeemability of the drink boxes was approved or

---

[3] ORS 646.605(6) was amended to include loans and extensions of credit in the definition of "real estate, goods or services."

certified by the legislature and the Bottle Bill should be decided by the factfinder.

### 1.2 ORS 646.608(1)(e)

Plaintiff alleges that Walgreen violated ORS 646.608(1)(e) "by representing that the exempt beverages had characteristics, uses, benefits, and qualities that they did not have, including that the exempt beverage containers would be redeemable in the amount of the 10-cent charge Walgreen added to the price of the exempt beverages, and by failing to disclose that the 10-cent charge it added to the price of exempt beverages would not be redeemable." Doc. 11 at ¶ 14.

The F&R's conclusion that plaintiff's subsection (1)(e) claim fails as to the misrepresentation about the 10-cent charge added on to the drink boxes is premised on the erroneous reasoning finding that "Walgreen's failure to disclose that the additional ten-cent charge was not refundable is not a violation of ORS 646.608(l)(e) because the ten-cent charge is not a "good." As explained extensively in plaintiff's response to the motion to dismiss, and again *supra*, the unlawful conduct itself does not need to be defined as a good; the misrepresentations or omissions merely need to be about the good or be "made in connection with the sale of goods." *Johnson & Johnson*, 275 Or. App. at 33. Here the representation about the 10 cents added to the price

of the drink boxes is about the goods and in connection with the sale of the goods.

The F&R separates the 10-cent charge that plaintiff paid as a result of Walgreen's misrepresentations that the 10 cents was a fee mandated by Oregon law and the direct and indirect misrepresentations that the drink boxes could be redeemed for 10 cents. Although it may be a separation without a difference, because plaintiff paid the 10 cents and was told that she could recoup the 10 cents when the drink box was returned, plaintiff will also discuss these two misrepresentations as separate events for the purpose of argument.

The F&R finds that plaintiff does not allege a viable subsection (1)(e) count as a matter of law because,

> the ability to redeem the beverage containers under the Bottle Bill is not an inherent feature of the beverages, nor does it impact the value of the beverages as a whole. Indeed, whether the packaging is redeemable concerns the application of a particular law and does not speak to a distinguishing attribute of the beverage products themselves. Though the packaging is certainly part of the "goods" bought by Gilberto, there is nothing about the packaging that increases the value of the beverages or that might induce consumers to purchase one type of beverage over another. To be sure, it is unlikely a thirsty consumer craving Hawaiian Punch would be deterred by packaging that was not redeemable. The redeemability of the beverage containers pursuant to the Bottle Bill therefore does not constitute a quality or characteristic of the beverages at issue here. Accordingly, the facts alleged fail to sufficiently plead a violation of ORS 646.608(1)(e).

Doc. 30 at 22-23.

This reasoning is erroneous for a variety of reasons. First, the F&R assumes elements that plaintiff must plead and prove in order to succeed on her subsection (1)(e) count: that the misrepresentation that the drink boxes could be redeemed for 10 cents must be an *inherent* feature of the goods, must impact the value of the beverages *as a whole*, must not concern application of a particular law, and must concern a *distinguishing attribute* of the beverage products themselves. None of the elements are part of the statute. Far from honoring the "overarching consumer protective purposes of the UTPA and [the] obligation to construe its provisions, to the fullest extent consonant with *Gaines*, to effectuate those remedial purposes," here and throughout, the F&R creates barriers to plaintiff's claim that are not found in the statute. *Johnson & Johnson*, 275 Or. App. at 37.

Although plaintiff does not need to allege or prove that redeemability is an "inherent feature" or a "distinguishing attribute" of the drink boxes or that it impacts "the value of the beverages as a whole," all those things are true. Plaintiff paid 30 cents more for the three Hawaiian Punch drink boxes in addition to the $1 base cost of the drinks and 60 cents more for the six Yahoo drink boxes because Walgreen represented that the drink boxes had the characteristic, use, benefit, and/or quality that they did have—that they would be redeemable for 10 cents each. This false representation of redeemability

equates to a total of $.90 and approximately 23% of the total price paid for the drink boxes. In these circumstances, redeemability for these low-cost consumer goods is an important feature.

As the F&R notes, the fact that redeemable value may be a feature that relates more to the drink boxes than the liquid inside the boxes is of no consequence. *See* Doc. 30 at 20 ("As a general proposition, the court notes that a product's packaging is part of that product, and therefore part of the 'good' under the UTPA."); *see also Webster's Third New International Dictionary Unabridged* (definition of "quality": "synonyms property, character, attribute, accident: quality is a general term applicable to any trait or characteristic; it is frequently used in relation to inherent traits not immediately apparent and ascertained only after experience or examination"); *id.* (definition of "characteristic": "1 : a trait, quality, or property or a group of them distinguishing an individual, group, or type : that which characterizes or is characteristic.").

As to the redeemability of the drink boxes being a "benefit" or a "use," of course they are both. The F&R reasons that "the ten cents to be gained is, in reality, a reimbursement of the additional ten-cent deposit charged upon purchase, and therefore not a monetary gain at all." That is contradicted by simple logic and by other findings in the F&R. If Walgreen's representations were true rather than false, then plaintiff

would be able to return the drink boxes for 10 cents each or gain $.90 in total. Instead she was left with drink boxes that had $0 in redeemable value. Redeemability clearly would have been a benefit and use of the goods under commonly understood definitions of these terms and comports with the overall purpose of the statute to provide a remedy for consumers like Ms. Gilberto. *See Webster's Third New International Dictionary Unabridged* (definition of "use": "synonyms service, advantage, profit, account, avail, and use have in common a sense of a useful or valuable end, result, or purpose. Use stresses the practicality of the end, result, or purpose for which something is employed <a tool with many uses > <put a gift of money to good use in paying off debts>."); *id.* (definition of "benefit": "to be useful or profitable to").

To decide as a matter of law that the represented feature of monetary redeemability does not fit within *any* of these intentionally general terms in subsection (1)(b), by referencing selected dictionary definition, ignores the legislative purpose of the statute and equates to an improper and subjective judicial determination that deprives the jury of determining if a reasonable consumer would be misled by Walgreen's misrepresentations about these goods.[4] *See Pearson v. Philip Morris,*

---

[4] The F&R's assessment that "it is unlikely a thirsty consumer craving Hawaiian Punch would be deterred by packaging that was not redeemable" is also improper to decide as a matter of law, but this is more appropriately addressed in the context of causation and ascertainable loss.

*Inc.*, 358 Or. 88, 135 n.26 (2015) (holding that whether a product's label was a misrepresentation under the UTPA "is determined based on an objective standard of what a reasonable consumer would understand the representation to be[.]"; *Andriesian v. Cosmetic Dermatology, Inc.*, No. 3:14-cv-01600-ST, 2015 U.S. Dist. LEXIS 50502, 2015 WL 1638729, at *3 (D. Or. Mar. 3, 2015) (to state a false labeling claim under the UTPA, "plaintiff must affirmatively plead and prove that the statements at issue are either objectively false or at least likely to mislead a reasonable consumer."), *adopted*, 2015 U.S. Dist. LEXIS 55149, 2015 WL 1925944 (D. Or. Apr. 28, 2015); *Silva v. Unique Bev. Co.*, No. 3:17-cv-00391-HZ, 2017 U.S. Dist. LEXIS 179362, at *6 (D. Or. Oct. 30, 2017) (holding same).[5]

The F&R cites to two Oregon Court of Appeals cases, *Caldwell v. Pop's Homes, Inc.*, 54 Or. App. 104 (1981), and *Feitler*, 170 Or. App. 702, in its subsection (1)(e) discussion. In both cases, the court found that the plaintiffs stated actionable violations of, *inter alia*, subsection (1)(e). However, the F&R uses these holdings to support its findings that plaintiff cannot do so here.

In *Caldwell*, the court found that the defendant's omissions about the pending sale of a mobile park in connection with a sale of a mobile

---

[5] Walgreens concedes that the drink boxes were in fact exempt and not redeemable, and the Bottle Bill is also clear that they are not.

home that sat in that park was an actionable violation of subsection (1)(e) because the "permanency of the location of the mobile home in the park was therefore both a 'characteristic' and a 'quality' of the home under ORS 646.608(1)(e)" and "[a] change in ownership of the park obviously jeopardized an owner's ability to keep the mobile home to in situ. Failure to communicate this fact constituted a false representation concerning a characteristic or quality of the mobile home." 54 Or. App. at 110.

In *Feitler*, the plaintiff had purchased from the defendant 47 original cartoon drawings after being told by the defendant that the plaintiff was getting all of drawings from that particular series or scene but in fact the seller withheld four more from the scene. The court held that the false representation of "exclusivity" was an actionable misrepresentation relating to the goods because "[i]n these circumstances, exclusivity was a 'characteristic' of the drawings for purposes of ORS 646.608(1)(e)." 170 Or. App. at 712.

Adopting the erroneous reasoning of the F&R, the omissions about the "permanency of the location" of the mobile home in *Caldwell* or the "exclusivity" of the drawings in *Feitler* would not be actionable because these terms are not specifically within the narrow definition of "goods" (or "real estate") adopted by the F&R. In any event, that omissions or false statements about the "permanency of the location" or

"exclusivity" of goods or real estate are actionable misrepresentations about the characteristics or qualities of a good, but here direct misrepresentations that a good can be redeemed for value when they cannot be, is not legally cogent; nor does it comply with the legislative intent that the UTPA "is to be interpreted liberally as a protection to consumers." *State ex rel. Redden v. Discount Fabrics*, 289 Or. 375, 386 n.8 (1980).

Plaintiff has sufficiently alleged a plausible UTPA count under ORS 646.608(1)(e).

### 1.3  ORS 646.608(1)(i)

Plaintiff alleges that Walgreen violated subsection (1)(i) "by advertising on the price tags on its shelves that the exempt beverage containers would be redeemable in the amount of the 10-cent bottle deposit charge, with intent that the exempt beverage containers would not be redeemable in the amount of the 10-cent charge, or by charging the 10-cent charge at its registers and on its receipts without disclosing that the exempt beverage containers would not be redeemable in the amount of the 10-cent charge." Doc. 11 at ¶ 17.

The F&R finds that the false advertisement on the price tags on Walgreen's shelves[6]—that the 10 cents added to the price of the drink

---

[6] For the purpose of this particular objection, plaintiff does not contest the findings in the F&R that the misrepresentations on the receipts and registers are not "advertising."

boxes was a valid deposit and that the drink boxes could be returned for 10 cents each—should be dismissed because the complaint does not sufficiently allege facts to plausibly allege that Walgreen had the "intent" not to provide the drink boxes as advertised. Doc. 30 at 24.

However, plaintiff's complaint clearly states that "[w]hen Ms. Gilberto learned that Walgreens collected bottle deposit charges on exempt beverages, she complained but Walgreens refused to give her a cash refund" and "[w]hen Ms. Gilberto learned that the boxes she purchased from Walgreens were not eligible for a 10-cent deposit refund under Oregon law, she complained to Walgreens management *and* to corporate, but Walgreens refused to give her a cash refund of the 10-cent overcharges it assessed against her for its exempt beverages. Corporate said they would call Ms. Gilberto back but never did." Doc. 11 at §§ 1,10.

Despite these allegations, the F&R curiously concludes that that "[t]here are no allegations that she attempted to return the beverage containers or that Walgreen denied redemption. Indeed, the Amended Complaint contains no facts to suggest anyone tried to redeem [the drink boxes] putting Walgreen on notice that such containers are exempt." Doc. 24. But this is precisely what plaintiff alleges.

Moreover, as discussed *supra*, the Bottle Bill law itself is clear that the drink boxes were exempt and not subject to deposit or refundable and Walgreen does not dispute this. "It is a basic assumption

of the legal system that the ordinary means by which the legislature publishes and makes available its enactments are sufficient to inform persons of statutes that are relevant to them; *Bartz v. State*, 314 Or. 353, 359-60 (1992); *Dungey v. Fairview Farms, Inc.*, 205 Or. 615, 621 (1955) (every person is presumed to know the law).[7] Walgreen knew that the drink boxes were exempt but mandated the false and additional 10-cent deposit charge and represented that the drink boxes were redeemable for 10 cents anyhow.

These allegations of Walgreen's intent are more than sufficient at the pleading stage. Even in a case where the heightened pleading standards of FRCP 9(b) apply (which this is not), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FRCP 9(b); *see also Horton v. Nelson*, 252 Or. App. 611, 621 (2012) (finding plaintiff's allegations that defendant advertised tractors on the Internet, that the defendant induced plaintiff into paying money to the company, and led plaintiff to believe that the tractor was in stock when the company never ordered the tractor, sufficiently pleaded a claim under subsection (1)(i)).

---

[7] In including links to the new article referencing Walgreens' past bottle deposit law "troubles," which the F&R decided was irrelevant, plaintiff's chief intent was to show that "Walgreens is intimately familiar with Oregon's bottle bill requirements": that Walgreens knew of its duty to comply with the various bottle deposit laws, including here in Oregon. *See* Doc. 30 at ¶ 22.

Plaintiff has sufficiently alleged a plausible UTPA count under ORS 646.608(1)(i).

### 1.4  ORS 646.608(1)(j)

Plaintiff alleges that Walgreen violated ORS 646.608(1)(j) by "falsely and misleadingly representing on the price tags on its shelves, or at its registers or on its receipts, that the total price of the exempt beverages would be reduced in the amount of the 10- cent bottle deposit charge when the exempt beverage containers were redeemed for the 10-cent charge, and failing to disclose that the exempt beverage containers could not be redeemed in the amount of the 10-cent charge that was added by Walgreens." Doc. 11 at ¶ 18.

Because this subsection does not contain the phrase "real estate, goods, or services," the F&R (in line with Walgreen's briefing) devotes a separate section to plaintiff's subsection (1)(j) claim, given the erroneous findings that the misrepresentations about the drink boxes are not about "goods." Here the F&R recommends dismissal of plaintiff's (1)(j) count because "[t]here was no misrepresentation as to a reduction of the normal price as presently existing at the time of purchase, only an additional charge for the item. Walgreen thus did not misrepresent a price reduction existing at the time of purchase...." Doc. 30 at 29. The F&R relies on *Denson*, 279 Or. 85.

Denson is distinguishable and inapposite. In *Denson*, the plaintiff brought his car to the defendant for repairs. The defendant represented that the regular price for the repair was $X, but quoted the plaintiff an offering price of $Y. When the repairs were complete, the actual price came out to $Z. 279 Or. at 87-88. "Plaintiffs [did] not contend that the normal price for such repairs was misrepresented." *Id*. at 91. The *Denson* court's finding was based on the fact that "the actual price was different from the offering price." *Id*. The reason that the court found that ORS 646.608(1)(j) was inapplicable to the offering price was that the offering price was only a promise and not a "representation of fact" as required by the language in ORS 646.608(1)(j).

Here, plaintiff alleges a misrepresentation of the normal or regular price. At the time of plaintiff's purchase, Walgreen charged her $2.60 for the Yoohoo drink boxes and $1.30 for the Hawaiian Punch drink boxes. Doc. 11 at ¶ 9. Walgreen represented its regular price for these drink boxes would effectively be reduced by $.90 when plaintiff returned the drink boxes. This was false. The prices advertised and charged to plaintiff were not merely a quote or an offer as in *Denson*; rather, these were the prices actually charged to and paid by plaintiff. The F&R's conclusion that somehow "[t]here was no misrepresentation as to a reduction of the normal price as presently existing at the time of purchase, only an additional charge for the item" is incorrect. Doc. 30 at

29; *see also* Doc. 30 at 26 (in discussing plaintiff's subsection (1)(s) count the F&R notes that "[t]he additional charges, however, were labeled 'BOTTLE DEPOSIT' and charged in tandem with the beverages. Given such circumstances, a reasonable consumer would assume the additional charges assessed on top of the purchase price were refundable in the event the empty beverage containers were returned.").

Plaintiff has sufficiently alleged a plausible UTPA count under ORS 646.608(1)(i).

### 1.5 ORS 646.608(1)(s)

Plaintiff alleges that Walgreen violated subsection (1)(s) "by making false and misleading representations about the total cost its customers would pay for its exempt beverages, including by falsely and misleadingly representing on the price tags on its shelves, or at its registers or on its receipts, that the total price of the exempt beverages would be reduced in the amount of the 10-cent bottle deposit charge when the exempt beverage containers were redeemed for the 10-cent charge, and failing to disclose that the exempt beverage containers could not be redeemed in the amount of the 10-cent charge that was added by Walgreens." Doc. 11 at ¶ 13.

The F&R correctly found that plaintiff sufficiently stated a claim under subsection (1)(s): "Walgreen thus represented that the total cost of the beverages-the amount charged and paid- included an additional

ten-cent charge per beverage on top of the normal list price, but that the additional charges were a deposit which could be recovered. Walgreen did not disclose that the additional amount charged was not actually refundable, simply retaining the additional monies charged. Taken as true, these facts sufficiently establish that Walgreen made misrepresentations of fact concerning the cost of the beverages" Doc. 30 at 26-27.

Walgreen's chief argument attacking plaintiff's subsection (1)(j) claim, and the F&R, is that "[t]he beverage price here is listed separately on Plaintiff's receipt, and Plaintiff makes no allegation that the offering price or cost of the beverages themselves was misleading or misrepresented." Doc. 32 at 6. Of course, plaintiff does make these allegations. Walgreen directly and indirectly represented that the total cost of the three Yoohoo drink boxes was $2.60 ($2 plus $.10 for each drink box) and the total cost of the Hawaiian Punch was $1.30 ($1 plus $.10 for each drink box), but plaintiff could return the drink boxes to recoup $.90 of the total price that she paid for the drink boxes. Doc. 11 at ¶ 9. This was demonstrably false because the drink boxes were not redeemable for any amount.

Walgreen's argument that because its system happens to print out a receipt that separately lists the false deposit charge below the base price of the drink boxes is unavailing, because these amounts were

labeled "BOTTLE DEPOSIT" and charged in tandem with the beverages.[8] Doc. 30 at 26. There would have been no such false representation about deposit charges and redeemability without the sale of the drink boxes. The additional deposit charges cannot be reasonably untethered from the sale of these goods as the amounts charged for the false deposits are in exact proportion to the quantity of each drink box Walgreen sold to plaintiff (10 cents each).

Consistent with the F&R, plaintiff has sufficiently alleged a plausible UTPA count under ORS 646.608(1)(s).

### 1.6 ORS 646.608(1)(t)

Plaintiff alleges that Walgreen violated ORS 646.608(1)(t) "by, concurrent with tender and delivery of beverages that were exempt from a 10-cent bottle deposit charge under Oregon law, knowingly failing to disclose that the 10-cent charge bottle deposit it charged did not conform to Oregon bottle deposit law, and by failing to disclose that the exempt beverage containers were in fact not redeemable in the amount of the 10-cent charge under Oregon law." Doc. 11 at ¶ 20.

As to plaintiff's subsection (1)(t) count, the F&R renews its erroneous reasoning that Walgreen's failure to disclose that the 10 cents it charged for each of the drink boxes and that the drink boxes were in

---

[8] Moreover, plaintiff also alleges that Walgreen misrepresented the total cost of the drink boxes on the price tags on its shelves and also on its registers.

fact unredeemable did not conform to the law because they are clearly exempt, because the bottle deposit charge itself is not a "good." Doc. 30 at 27. As discussed in depth already, this reasoning is incorrect.

The F&R also rejects the "nonconformity" element of this count, without explanation, besides stating that omissions about that the drink boxes were exempt "does not constitute a material defect or a material nonconformity of the beverages…." *Id.* But there is no reason why this particular nonconformity does not fit within the broad language of this subsection. The F&R also concludes that the omissions are not material because the drink boxes' redeemability "is not an inherent characteristic or quality of the beverages that would materially bear on a thirsty consumer's purchasing decision." *Id.* This is a determination that should be made by a jury not a court. *See Christofferson v. Church of Scientology*, 57 Or. App. 203, 249 (1982) (holding that in fraud action, defendant was entitled to jury instruction regarding the objective component of a "material fact" because the dictionary definition did not include the subjective component).

As to the requisite knowledge element in subsection (1)(t), plaintiff has alleged sufficient facts at the pleading stage regarding scienter. Moreover, given that Walgreen is tasked with operating a retail and bottle deposit refund operation, thus the state's directives about the

Bottle Bill "are sufficient to inform [Walgreen] of statutes that are relevant to them." *Bartz*, 314 Or. at 359-60.

Consistent with the F&R, plaintiff has sufficiently alleged a plausible UTPA count under ORS 646.608(1)(t).

## 2. Plaintiff sufficiently alleges ascertainable loss as a result of Walgreen violations of ORS 646.608(1)

"Ascertainable loss under the UTP A is amorphous. Any loss will satisfy [the] requirement so long as it is capable of being discovered, observed, or established." *Feitler*, 170 Or. App. at 712 (internal quotes and citation omitted).

The ascertainable loss requirement "should be viewed broadly. The private loss indeed may be so small that the common law likely would reject it as grounds for relief, yet it will support an action under the statute." *Weigel v. Ron Tonkin Chevrolet Co.*, 298 Or. 127, 136 (1984). Ascertainable loss can be as simple as the difference in value between a product as represented and as actually received by a consumer. *See Paul v. Providence Health Sys.*, Or., 237 Or. App. 584 (2010).

As far as causation of an ascertainable loss, plaintiff must merely prove that her loss (of money or property) resulted from Walgreen's alleged acts and omissions in violation of the UTPA—not that her purchase was the result of Walgreen's unlawful misrepresentations. *Pearson*, 358 Or. at 144 (Walters, J., concurring) ("The UTPA does not require that a consumer's *purchase* be the 'result of' an unlawful trade

practice; it requires that a consumer's ascertainable *loss* be the 'result of' an unlawful trade practice." (emphasis in original)).

In *Pearson*, the majority opinion clarified that reliance is not always necessary to establish that a plaintiff's ascertainable loss was caused by a defendant's unlawful conduct. *Id*. at 127 (majority opinion) ("reliance is not, in and of itself, an element of a UTPA claim" though it may be "a natural theory to establish the causation of the loss i.e., the 'injury' in a UTPA claim) for a purchaser *seeking a refund* based on having purchased a product believing it had a represented characteristic that it did not have." *Id*. at 126 (emphasis added).

Even in the case of a UTPA claim based purely on an express misrepresentation rather than omission, it "is not the nature of the misrepresentation ... that requires proof of reliance. It is the misrepresentation coupled with plaintiffs' theory for having suffered a loss in the form of the purchase price because they did not get what they believed they were buying. In this case, reliance inheres in the combination." *Id*.

In *Pearson* the court upheld the denial of class certification by the trial court because based upon the fact that the plaintiffs could not adequately show a difference in value between the price of the light cigarettes that they purchased versus the same brand non-light cigarettes because there was no economic diminution in value. The

plaintiffs could assert a refund of the purchase price loss, but the trial court found that would require proof of reliance for the class members, which the trial court found created manageability concerns under the state court class procedural rules. The majority upheld that decision by the trial court to manage its own docket. *Id*. at 119-36.

Justice Walters joined in the opinion, but wrote a separate concurrence "to call attention to the important difference between two types of ascertainable losses that a plaintiff may seek to recover in a claim under the Unlawful Trade Practices Act—diminished value and a refund of the purchase price … and a correct understanding of the law is important to those whose business or trade practices are subject to the UTPA, as well as to those who purchase real estate, goods, or services that are subject to the act." *Id*. at 142 (Walters, J., concurring).

Justice Walters noted that the combination of an express misrepresentation and refund of the purchase price loss would require proof of reliance; however, an express misrepresentation coupled with a diminished value theory of ascertainable loss does not require proof of reliance:

> [t]hat does not mean however a plaintiff who *can* show a difference between the price paid for a misrepresented product and the market value of that product must, like a plaintiff seeking a refund of the purchase price, also show that he or she made a subjective choice to purchase the product because of the misrepresented characteristic.

*Id.* at 143 (emphasis in original).

Here, plaintiff has clearly alleged that she suffered an ascertainable loss as a result of Walgreen's misrepresentations and omissions in violation of the UTPA, including that,

> Ms. Gilberto and thousands of other Oregon customers suffered ascertainable losses of the 10-cent bottle deposit charges that Walgreens unlawfully added on to the exempt beverages. Ms. Gilberto and each member of the putative Oregon class suffered actual ascertainable loss of the 10 cents they were charged by, and paid to, Walgreens, which was not redeemable upon return of the exempt beverage containers, and which was 10 cents more than Ms. Gilberto and the putative class should, and would, have paid for the same exempt beverages at Walgreens, but for Walgreens's unlawful representations and omissions in violation of the UTPA as alleged in this complaint.

Doc. 11 at ¶ 23.

Plaintiff's receipt for her purchase showed that she paid a total of $2.60 for the Yoohoo drink boxes and $1.30 for the Hawaiian Punch drink boxes. Doc. 11 at ¶ 9. Walgreen falsely represented (and caused the likelihood of confusion or misunderstanding) that the drink boxes were worth the same additional ($.90) amount that Walgreen added on to the total cost of the drink boxes when returned.  But that was not true. As a result of Walgreen's misrepresentations of ORS 646.608(1), plaintiff ended up with empty drink boxes that could be returned for no value. This is an ascertainable loss that is easily "capable of being discovered, observed, or established." It is 90 cents. *Feitler*, 170 Or. App. at 712 (internal quotes and citation omitted).

Diminished value can sometimes be inferred, and the precise measure of the ascertainable loss need not even be alleged or proven if the plaintiff seeks statutory damages of $200 rather than actual damages in the amount of the loss. *See Martin v. Cahill*, 90 Or. App. 332, 335-36 (1988); *Simonsen v. Sandy River Auto LLC*, 290 Or. App. 80, 91 (2018); *Scott v. W. Int'l Surplus Sales, Inc.*, 267 Or. 512, 515 (1973). But it does not need to be inferred here and the amount of the diminished value loss is clear.

Because plaintiff can show a diminished value between the goods that she received and what Walgreen misrepresented, directly or indirectly, her subjective intent (reliance) and what she intended to do with the product (redeem or not redeem) are irrelevant. Justice Walters' concurrence in *Pearson* summarizes this principle well:

> That understanding of the UTPA comports with its purpose. People buy products after weighing numerous characteristics, benefits, and qualities. They may make their final decisions based on more than one of a product's features, or they may not be able to articulate why, in the end, they laid their money down. But when people make purchases, they nevertheless expect to receive products that have all of the represented features, not only those features that were subjectively determinative in the purchasing decision. When a plaintiff establishes that he or she purchased a product that was not as represented and that he or she suffered diminished value as a result, the purchaser demonstrates ascertainable loss sufficient to permit a claim under the UTPA.

*Pearson*, 358 Or. at 144.

The F&R erroneously finds that "[i]ndeed, Gilberto was charged and paid an additional ten cents, but not for an inherent feature, such as a specific flavor, that might influence a consumer's choice of one beverage over another. Instead, Walgreen applied the Bottle Bill deposit erroneously, and the value of the beverages themselves remained the same. Thus, no loss to the beverages' inherent value occurred, and Gilberto fails to allege ascertainable loss under this theory." Doc. 30 at 33.

There is no legal basis for inserting this "inherent feature" language into the discussion of whether plaintiff suffered an ascertainable loss, and the value of value of the goods that plaintiff received was not the same as was represented. As the F&R correctly notes in another section, "[a]s a general proposition, the court notes that a product's packaging is part of that product, and therefore part of the 'good' under the UTPA." Doc. 30 at 20. Because plaintiff ended up with drink boxes that are worth less than what was represented, she suffered diminished value and alleges ascertainable loss "sufficient to permit a claim under the UTPA" without the need to prove any subjective reasons for her purchase or reliance on Walgreen's misrepresentations before purchasing the drink boxes.[9]

---

[9] Plaintiff's response to the motion to dismiss discussed an additional "theory" of loss under the UTPA—an illegal charge. *See* Doc. 18. Plaintiff relies on her response brief for this argument as she believes it is

### 3. Walgreen's willfulness and recklessness

In her response to the motion to dismiss, plaintiff stated that "[u]nless and until this case is certified as a class action, plaintiff need only prove a 'willful' violation of the UTPA to succeed on her individual claim. ORS 646.638(1). Even after certification, plaintiff and the putative class members still need only prove a willful violation to recover actual damages at trial. ORS 646.638(1), (8). Only if this case is certified as a class action, and only if plaintiff and the putative class members seek class statutory damages instead of actual damages at trial must plaintiff prove a 'reckless or knowing' violation. ORS 646.638(8). Doc. 18 at 47.

"Willful" under the UTPA means defendant knew or should have known its conduct violated the UTPA. ORS 646.605(10). Plaintiff alleges more than sufficient facts to state a plausible claim for Walgreen's willful violations of the UTPA. *See* Doc. 11 at ¶ 2.

The F&R reasons that because plaintiff states that she seeks $200 in statutory damages on behalf of the putative class, that she "must adequately plead more than a willful violation on the part of Walgreen: she must sufficiently allege that Walgreen's conduct was reckless or

---

applicable, although not necessary to allege and prove in this case. In fact, there are no set or exhaustive "theories" of ascertainable loss; the loss just needs to be capable of being discovered and have resulted from a defendant's violations of the UTPA.

knowing." Doc. 30 at 35. The F&R cites to *Hamilton v. Gen. Mills, Inc.*, No. 6:16-cv-382-MC, 2016 U.S. Dist. LEXIS 152425, at *5 (D. Or. Nov. 2, 2016), as support for this principal.

The facts of this case, and plaintiff's allegations, are inapposite to those in *Hamilton*, where "[t]he alleged misconduct is specific to an isolated occurrence" and the plaintiff's "only alleged injury" "has been dispelled through defendant's voluntary recall program."

Plaintiff is not aware of any other authority for this principle that a yet-to-be-certified class case must allege facts indicating this heightened scienter at the pleading stage.

However, even in fraud cases (which this is not) when the heightened pleading requirement of FRCP 9(b) is applicable, that rule provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." It is rare that prior to discovery, a plaintiff would have sufficient evidence to allege a defendant's reckless or (especially) knowing state of mind. However, in this case, all of Walgreen's alleged violations of the UTPA stem from its misrepresentations that another law, the Bottle Bill, mandated that plaintiff (and the class) pay an extra 10 cents for every drink box purchased, despite the fact that the Bottle Bill exempted these goods. *See* ORS 459A.702(2). Walgreen's does not dispute this fact.

Because Walgreen is obligated to charge the deposits on qualifying goods and to facilitate a return program for these goods because it sells them, it is also presumed that "the ordinary means by which the legislature publishes and makes available its enactments are sufficient to inform persons of statutes that are relevant to them. *Bartz*, 314 Or. at 359-60. Continuing to charge "thousands of other Oregon Walgreens customers who were assessed bottle deposit charges on exempt beverages that could not be refunded under Oregon law" even after plaintiff "complained but Walgreens refused to give her a cash refund" when Walgreen is presumed to know that the products are exempt under the law should be sufficient evidence of recklessness or intentionality at the pleading stage, if this is required. Doc. 11 at ¶ 2.

The F&R concludes that "the Amended Complaint states that the corporate office 'never called her back.' Under such facts, the court could plausibly infer that Gilberto never properly relayed her complaint to Walgreen, and Walgreen was therefore never put on notice that its conduct possibly violated the UTPA." Doc. 30 at 36. Respectfully, this inference does not appear to reflect the standard to "accept all material facts alleged in the complaint as true and construe them in the light most favorable to the nonmoving party." *Wilson*, 668 F.3d at 1140. Instead, this inference in the F&R appears to do the opposite and infer the facts in the light most favorable to Walgreen.

Plaintiff has sufficiently alleged that Walgreen's violations of the UTPA were both "willful" and "reckless or knowing" (if required) at this stage of the pleadings.

## CONCLUSION

For all these reasons, the F/R should not be adopted, with the exception of the sufficiency of plaintiff's ORS 646.608(1)(s) count.  In the event this Court finds otherwise, plaintiff should be afforded an opportunity to save her complaint by further amendment under these circumstances. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

December 9, 2019

**RESPECTFULLY FILED,**

s/ Kelly D. Jones
**Kelly D. Jones, OSB No. 074217**
Of Attorneys for plaintiff
The Law Office of Kelly D. Jones
819 SE Morrison St., Suite 255
Portland, Oregon 97214
kellydonovanjones@gmail.com
Direct 503-847-4329

# CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b) because it contains 8,810 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

December 9, 2019

s/ Kelly D. Jones
**Kelly D. Jones, OSB No. 074217**
Of Attorneys for plaintiff
The Law Office of Kelly D. Jones
819 SE Morrison St., Suite 255
Portland, Oregon 97214
kellydonovanjones@gmail.com
Direct 503-847-4329

# CERTIFICATE OF SERVICE

I caused this document to be served on all parties through the CM/ECF system.


December 9, 2019.

<div style="margin-left: 40%;">

s/ Kelly D. Jones

**Kelly D. Jones, OSB No. 074217**
Of Attorneys for plaintiff
The Law Office of Kelly D. Jones
819 SE Morrison St., Suite 255
Portland, Oregon 97214
kellydonovanjones@gmail.com
Direct 503-847-4329

</div>